## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

CHAUNA JONES f/k/a CHAUNA CRAWLEY :
TYRONE HENDERSON, *on behalf of themselves* :
*and all other similarly situated individuals* :
  :
      Plaintiffs, :
  :
v. :
  :
EQUIFAX, INC., in its own name and t/a :
EQUIFAX WORKFORCE SOLUTIONS :
a/k/a TALX CORPORATION :
  :
SERVE: Corporation Service Company :
      Bank of America Center, 16th Floor :
      1111 East Main Street :
      Richmond, VA 23219 :
  :
and :
  :
EQUIFAX INFORMATION SERVICES, LLC :
  :
SERVE:     Corporation Service Company :
        Bank of America Center, 16th Floor :
        1111 East Main Street :
        Richmond, VA 23219 :
  :
      Defendants. :

CIVIL ACTION NO.

3:14CV678

FILED

OCT 3 2014

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Chauna Jones f/k/a Chauna Crawley ("Jones") and Tyrone

Henderson ("Henderson" or collectively referred to as "Plaintiffs"), on behalf of themselves and

all other similarly situated individuals, by counsel, and as for their Complaint against the

Defendants, they state as follows:

## PRELIMINARY STATEMENT

1.     The Plaintiffs bring this class action against the Defendants to obtain relief for themselves and the class they propose to represent for the Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2.     Defendants operate as a single FCRA governed "consumer reporting agency." Equifax, Inc. has structured itself in order to warehouse its sale of credit-reporting consumer reports in one entity and its sale of employment, payroll, and income-records consumer reports in a second entity. However, it freely transfers data between units and operates without any impediments of corporate structure. In almost every material regard, the Equifax units operate as if they are one and the same, a single "consumer reporting agency."

3.     Despite the Defendants' governance by the FCRA, they operate as if the law does not exist. They maintain an extensive database called "The Work Number" (afterwards referred to as "Work Number Database") that contains employment, payroll, and income records from more than 2,000 employers nationwide, including two out of three Fortune 500 companies and 90 percent of federal agencies. http://www.theworknumber.com/Employees/Why/index.asp (last visited September 30, 2014). They then sell consumer reports generated from the database and furnish these consumer reports to users. The Defendants advertise that these reports can be used to assess "ability to afford", to gain information that virtually eliminates reliance on applicant-provided data, to increase regulator and internal compliance, and to add consistency and operational efficiency. Verification Services Overview (March 19, 2013) (attached as Exhibit "A").

4. Because of the extensive and highly sensitive information contained in the Work Number Database, it is imperative that consumers are allowed to easily gain access to and review the information that the Work Number Database maintains on them, as required by the FCRA.

5. Plaintiffs allege a class-claim under 15 U.S.C. § 1681g. The Plaintiffs requested a full copy of their credit files from the Defendants. When the Defendants responded to the Plaintiffs, they refused to disclose any information from their Work Number Database.

6. Plaintiff Henderson also alleges an individual claim for Defendant Equifax Information Services, LLC's violation of 15 U.S.C. § 1681e(b) due to its failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning him.

## JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p). Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendants regularly conduct business in this district and division.

## PARTIES

8. Plaintiffs are both natural people residing in Virginia, and at all times relevant to the Complaint were each a "consumer" as defined by 15 U.S.C. §1681a(c).

9. The Defendants are Equifax, Inc. in its own name and trading as Equifax Workforce Solutions a/k/a TALX Corporation, as well as Equifax Information Services, LLC (Together, "Defendants" or "Equifax").

10. Upon information and belief, Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f). Upon information and belief, Equifax is regularly engaged in the

business of assembling, evaluating, and disbursing information concerning consumers for the

purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

## FACTS

## DEFENDANTS OPERATE AS A SINGLE NATIONAL CREDIT REPORTING AGENCY

11.    The Defendants holds themselves out as "a leading global provider of information

solutions and human resources business process outsourcing services for business and

consumers" with products and services "based on comprehensive databases on consumer and

business information derived from numerous types of credit, financial assets,

telecommunications and utility payment, employment, income, public record, demographic and

marketing data." Equifax, Inc. 2012 Form 10-K Annual Report, 2 (February 22, 2013).

12.    The Defendants maintain these databases in order to "analyze all available data,

creating customized insights, decision-making solutions and processing services for [their]

clients." *Id.*

13.    The Defendants maintain a database known as the Work Number Database.

14.    In maintaining this database, the Defendants assert that:

> We rely on payroll data received from over 2,500 organizations, including almost
> three quarters of Fortune 500 companies, to regularly update the database. The
> updates occur as employers transmit data electronically to Equifax from their
> payroll systems. Employers contract to provide this data for specified periods
> under the terms of contracts which range from one to five years. We use this data
> to provide employment and income verification services to third-party verifiers;
> the fees we charge for these services are generally on a per transaction basis.
> After the expiration of the applicable contract, absent renewal by mutual
> agreement of the parties, we generally do not have any further right to use the
> employment data we obtained pursuant to the contract. We have not experienced
> significant turnover in the employer contributors to the database because we
> generally do not charge them to add their employment data to the database and the
> verification service we offer relieves them of the administrative burden and
> expense of responding to third party employment verification requests. The

database contained approximately 221 million current and historic employment records at December 31, 2012.

*Id.* at 6.

15.     The Work Number Database offers information for several purposes. For example, The Work Number offers several products that can be used to verify employment information including, but not limited to: employment data direct from employers, including start date, tenure, job title, etc.; income information; business and regulatory listings; confirmation that a consumer is currently employed with a company on The Work Number; tax transcript information; reverification of information needed for loan closing; and portfolio monitoring of a specific consumer.

16.     The Work Number Database also offers products used for identity assessment and authentication including, but not limited to: social security number authentication report; SSA Death Master File Audit; and identity usage history, which reports on the validity of a social security number, as well as place and date of issue, as well as previous addresses associated with the name or social security number, as well as indicators of multiple identities.

17.     The Work Number also maintains extensive tax information on consumers. According to its website, "Our IRS income verification service is an efficient, cost-effective way to retrieve all tax transcript forms -- 1040s to 1099s, W-2s, state income reports, and business income tax returns. The tax transcript provides a complete picture of all household income, including investment income as well as salary and wages." http://www.theworknumber.com/ Verifiers/Products/4506T.asp#sts=IRSIncome Verification - 4506-T Tax Transcripts (last visited September 30, 2014).

18.     The Work Number Database provides an account verification service in which it provides consumers' bank statements and other financial documents to its customers.

19.    The Work Number also offers a business verification service, in which it

> offer[s] an industry leading, fully automated solution for confirming deposits and
> assets held in accounts by corporate entities or in the personal accounts of the
> business' principals. In addition, [The Work Number is] the industry leader in IRS
> tax transcript fulfillment for both individual tax information and business filings.
> Furthermore, Equifax can verify an Employer Identification Number (EIN).

http://www.theworknumber.com/Verifiers/Products/business_verifications.asp (last visited

September 30, 2014).

20.    The Work Number sells this information to its customers for a variety of reasons

including, but not limited to, to approve a consumer for credit or employment, to assess a

consumer's "ability to afford", to analyze a person's deposits and assets for loan production, and

to assess business risk in potential investments. *See* http://www.theworknumber.com/Verifiers/

Products/index.asp (last visited September 30, 2014); *see also* http://www.theworknumber.com/

Employees/Help/faq.asp?category=general#2 (last visited September 30, 2014).

21.    The Work Number Database is extensive. It receives its data from more than

2,500 employers, including several Fortune 500 and other large, private companies and

government agencies, such as the Internal Revenue Service. And, according to its website, The

Work Number Database is updated every time that an employer runs payroll.  http://www.

theworknumber.com/Verifiers/Help/faq.asp?category=general#3 (last visited September 30,

2014). As of June 10, 2013, The Work Number website boasted that its database contained 58

million current records and over 165 million historical payroll records regarding consumers. *See*

http://www.theworknumber.com/Verifiers/; http://www.theworknumber.com/Verifiers/

Industries/Education.asp (last visited September 30, 2014).

22.    The Work Number Database has an impact on virtually every credit industry and

customizes its products as tailored to each industry.

23.    For example, mortgage companies seeking information regarding a loan applicant are encouraged to review the following products in order to evaluate "ability to pay" and loan eligibility: Employment Verification; Employment & Income Verification; Reverify – Closing Verbal VOE; Point in Time ™ - Retro Income Verification; IRS Income Verification – 4506-T Trans Transcript Fulfillment; Identity Assessment & Authentication; The Work Number Alert – Portfolio Monitoring; The Work Number Select – Portfolio Segmentation; and Employment Indicator – Portfolio Segmentation.

24.    The Work Number website offers similar product recommendations to evaluate risk for other transactions, including auto loans, credit cards and other consumer finance opportunities, employment pre-screening, property management, and education loans.

25.    The Work Number's products have far reaching consequences for consumers throughout the United States.

26.    For example, in October 2012, Equifax partnered with Lender Processing Services ("LPS") to enable lenders to automatically order Verifications of Employment ("VOEs") from Equifax's Work Number Database through LPS's Loan Quality Gateway system. The Defendants claim that this system will help lenders reduce paperwork at underwriting and closing and will also "help[ ] to reduce loan buyback risk by using third-party verification to identify errors and borrower misrepresentation." *LPS Partners with Equifax to Offer Lenders Employment Verifications through the Loan Quality Gateway*, Equifax Press Release (October 23, 2012), http://www.theworknumber.com/Verifiers/News/Equifax-LPS-LQG-102312.pdf.

27.    Additionally, in January 2013, Equifax partnered with DocuSign to allow individuals to electronically sign and submit an essential mortgage lending IRS form used to

request a transcript of a consumer's tax return, known as the "4506-T" form. Through this

program, Equifax

> lets the lender send a request form to the loan applicants for signature using
> DocuSign as a value-added element provided a faster, secure, legal signature as
> authorization to release information. This simple step can be completed during
> their normal tax transcript ordering process and eliminates the need for the lender
> to collect the signature separately and upload the signed document. Equifax then
> processes the request, including routing to appropriate parties at the IRS, ensuring
> a fast, paperless transaction that authorizes the distribution of tax information to
> the lender.

*Equifax and Docusign Help the IRA Accelerate Forms Processing with eSignature.* Equifax

Press Release (January 10, 2013), http://www.theworknumber.com/Verifiers/News/DocuSign-

Equifax-Press-Release-January-10-2013.pdf. The processing of these eSignatures is

accomplished through its Work Number Database.

28.     Furthermore, several employers, such as Oregon State University, use The Work

Number to outsource its employment and social service verifications for items such as mortgage

applications, reference checks, loan applications, apartment leases, and government aid such as

food stamps or (SNAP), Aid to Families with Dependant Children (AFDC), Temporary Aid to

Needy Families (TANF), Medicaid, Women, Infants, and Children (WIC), and government

housing programs. *See* http://hr.oregonstate.edu/policies-procedures/employees/work-number-

employment-verification-system/frequently-asked-questions (last visited September 30, 2014).

29.     Organizations, such as Oregon State University, use the Work Number to reduce

its costs in its human resources department. For example, Oregon State University states on its

website:

> Currently, the Human Resources department bears the cost of processing
> employment verifications, including time, labor, fax, and postage charges.
> Using **THE WORK NUMBER**® virtually eliminates this processing cost for
> Oregon State University.

> Verifiers pay a fee to obtain employment and income verifications from The Work Number. The practice of paying a fee for employment verification is widely accepted and generally taken from the loan-processing fee that most lending institutions or property managers charge for loan or rental applications. Our employees are not charged any additional fees for this service.

*Id.*

30.     Upon information and belief, the Work Number provides these services at a reduced cost, or no cost at all, so long as the organizations agree to provide their payroll information and other highly sensitive information regarding their employees to the Work Number Database.

31.     Upon information and belief, Equifax also sells the information in its Work Number Database to debt collectors. *See* Bob Sullivan, *EXCLUSIVE: Your Employer may Share your Salary, and Equifax might Sell that Data*, (January 30, 2013 4:44 AM), http://redtape. nbcnews.com/_news/2013/01/30/16762661-exclusive-your-employer-may-share-your-salary-and-equifax-might-sell-that-data.

32.     By their own repeated admissions, Defendants are regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

33.     The data and reports Equifax sells from its Work Number Database are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the data included in each report bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer.

34.     And by their own admission, each of the Equifax entities is integrated as a single national credit reporting agency, with all databases marketed and made available to each of Equifax's customers regardless of structure or category of content. *See generally* Equifax, Inc.

2012 Form 10-K Annual Report, 2 (February 22, 2013) (referring to all of Equifax's 'operating segments' as one entity, Equifax, Inc.); http://www.equifax.com/business/all-products (last visited September 30, 2014) (containing information about all of Equifax's 'operating segments' on a single website).

35.     Accordingly, as previously alleged, Defendants operate collectively and jointly as a national "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

36.     In fact, on the Work Number website, the Defendants state "Under FCRA, we are a Consumer Reporting Agency and subject to its requirements. We're committed to safeguarding your privacy, and we fully comply with FCRA requirements." http://www.theworknumber.com/Employees/FCRA/index.asp (last visited September 30, 2014).

### PLAINTIFF JONES REQUESTS A COPY OF HER REPORT

37.     In early 2013, Plaintiff Jones requested a full copy of her file from the Defendants.

38.     On or around February 13, 2013, in response to Plaintiff Jones's request, Equifax provided and furnished to Ms. Jones only her conventional credit report portion of Equifax's file and falsely represented that it had provided her full file.

39.     In its response, the Defendants did not include any information about Plaintiff Jones's entry in their Work Number Database.

40.     Equifax did not provide Plaintiff Jones a copy of her full consumer file as it would sell to a third party.

### PLAINTIFF HENDERSON REQUESTS A COPY OF HIS REPORT

41.     In approximately April 2013, Plaintiff Henderson requested a full copy of his file from the Defendants.

42.     On or around May 24, 2013, in response to Plaintiff Henderson's request, Equifax provided and furnished to Mr. Henderson only his conventional credit report portion of Equifax's file and falsely represented that it had provided his full file.

43.     In its response, the Defendants did not include any information about Plaintiff Henderson's entry in their Work Number Database.

44.     Equifax did not provide Plaintiff Henderson with a copy of his full consumer file as it would sell to a third party.

45.     Furthermore, Plaintiff Henderson discovered that his credit file contained numerous pieces of inaccurate information that did not belong to him.

46.     For example, and without limitation, the credit file listed information that does not belong to Plaintiff Henderson, including name variation, and an address that does not belong to him.

47.     As a result of this inaccurate credit reporting, Plaintiff Henderson suffered actual damages.

## THE DEFENDANTS' CONDUCT WAS WILLFUL

48.     The Defendants are well aware of their obligations under the Fair Credit Reporting Act.

49.     The Defendants knew about their legal obligation to provide all information in a consumer's file upon the consumer's request under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

50.     In fact, the Defendants stated in their 2012 10-K report filed with the Securities Exchange Commission that:

The Fair and Accurate Credit Transactions Act (2003), or FACT Act, which
amended the FCRA and requires . . . nationwide consumer credit reporting
agencies, such as us, upon the request of a consumer, to . . . furnish a free annual
credit file disclosure to consumers through a centralized request facility we have
established with the other nationwide credit reporting agencies.

*Id.* at 11.

51.     Despite knowing of these legal obligations, the Defendants acted consciously in
breaching their known duties and deprived the Plaintiffs and other members of the class of their
rights under the FCRA.

52.     Defendants' conduct was not a mere mistake or accident. Instead, it was the
intended result of their standard operating procedures.

53.     Additionally, Equifax Information Services, LLC has been sued repeatedly for
failing to establish or to follow reasonable procedures to assure maximum possible accuracy in
the preparation of the credit reports and credit files it publishes and maintains, including in this
District and Division. *See e.g., Mullins v. Equifax Information Services, LLC,* 3:05cv888, 2007
WL 2471080 (E.D. Va. August 27, 2007); *Saunders v. Branch Banking and Trust Co.,*
3:05cv731 (E.D. Va.); *Ross v. Experian Information Solutions, Inc.,* 3:09cv144 (E.D. Va. 2009);
*Baker v. TransUnion, LLC,* 3:07-cv-107 (E.D. Va. 2007); *Roger Pace v. Equifax Information
Services, LLC,* 3:11-cv-554 (E.D. Va. 2012).

54.     Despite these lawsuits, Equifax Information Services, LLC has not significantly
modified its procedures to assure that the credit reports that it prepares, publishes, and maintains
are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

55.     Upon information and belief, Equifax Information Services, LLC has not, and
does not intend, to modify its procedures to comply with this section of the FCRA because
compliance would drastically increase its operating expenses.

56.     Additionally, Equifax Information Services, LLC obtained or had available substantial written materials that apprised it of its duties under the FCRA.

57.     Plaintiffs allege that the Defendants' conduct as alleged in this Complaint was consistent with its established and systemically executed procedures and policies for compliance with the FCRA.

58.     Accordingly, the Defendants' violations of 15 U.S.C. §§ 1681e(b) and 1681(g) were willful and they are liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## Count I:  Violation of 15 U.S.C. § 1681g(a)
## CLASS CLAIM

59.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

60.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who requested their consumer file from Equifax, Inc., any of its affiliated companies, subsidiaries, or any other Equifax entity, (b) within five years preceding the filing of this action and during its pendency, and (c) to whom the Defendants provided a response that did not include any information from its "Work Number" database. Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

61.     Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical.

62.     Plaintiffs' counsel is in possession of numerous letters and consumer files that Equifax sent to a consumer in response to his or her request for a complete copy of his or her Equifax consumer file. None of these letters or consumer files contain any reference to the

Defendants' "Work Number Database." These response letters have remained consistent and uniform across time, jurisdictions, and consumers.

63.     There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether the Defendants failed to send the required information in response to a consumer's request for a full copy of his or her Equifax file; (b.) whether this failure was a result of the Defendants' standard operating procedure when responding to a consumer's request for a full copy of her or her credit file; (c.) whether the Defendants' conduct constituted a violation of the FCRA; (d.) whether the Defendants' conduct was willful; and (e.) the appropriate amount of statutory and/or punitive damages that are appropriate for such a violation.

64.     Plaintiffs' claims are typical of those of the class members. All are based on the same facts and legal theories. The Defendants' response to a consumer's request for a full copy of his or her consumer file routinely failed to include any information about the Defendants' "Work Number" database during the full class period. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiffs' claim rises or falls.

65.     The Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. The Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

66.     Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter,

would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

67.     Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

68.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by the Defendants' FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

69.     The Defendants' failure to disclose all information in the consumer's file in response to a consumer's request for this information violated 15 U.S.C. § 1681g(a) as to the Plaintiffs and other putative class members.

70.     The conduct, action, and inaction of the Defendants were willful, rendering the Defendants liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

71.     Plaintiffs and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from the Defendants, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent entitling the Plaintiffs and the class to actual damages in the amount of the value of their consumer file.

72.     As a result of these FCRA violations, the Defendants are liable to the Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, and/or actual damages, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

### Count II: Violation of 15 U.S.C. § 1681e(b)
### Plaintiff Henderson's Claim Against Defendant Equifax Information Services, LLC

73.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

74.     Equifax Information Services, LLC violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff Henderson.

75.     As a result of this alleged conduct, action, and inaction, Plaintiff Henderson

suffered actual damages.

76.     Equifax Information Services, LLC's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

77.     The Plaintiff is entitled to recover actual damages, statutory damages, costs, and his attorney's fees from Equifax Information Services, LLC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move for class certification and for statutory and punitive damages, as well as their attorney's fees and costs against the Defendants for their class claim, as well as actual, statutory, and punitive damages, as well as their attorney's fees and costs for Plaintiff's Henderson's individual claim against Defendant Equifax Information Services, LLC; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**CHAUNA JONES and**
**TYRONE HENDERSON,** *on behalf of*
*themselves and all other similarly situated*
*individuals*

By:_____
            Of Counsel

Case 3:14-cv-00678-MHL   Document 1   Filed 10/03/14   Page 18 of 18 PageID# 18

Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:   (703) 273-7770
Fax:   (888) 892-3512
matt@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB No. 37523
*Attorney for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Tel:   (757) 930-3660
Fax:   (757) 930-3662
lenbennett@cox.net

18