**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

CHAUNA JONES f/k/a CHAUNA CRAWLEY,
TYRONE HENDERSON, on behalf of themselves
and all other similarly situated individuals,

      Plaintiffs,

v.                                    Case No.: 3:14-cv-678-MHL

EQUIFAX, INC., in its own name and t/a
EQUIFAX WORKFORCE SOLUTIONS
a/k/a TALX CORPORATION and
EQUIFAX INFORMATION SERVICES LLC,

      Defendants.

**<u>MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS</u>**

      This is a putative class action in which Plaintiffs ask the Court to accept an unprecedented interpretation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et. seq., which has no basis in the plain language of the statute and—in fact—directly contradicts legal guidance regarding the FCRA promulgated by two federal agencies charged with its construction.

      Plaintiffs are consumers who alleged that they requested consumer report disclosures from "Defendants," but fail to identify the specific entity to which they made their request. Indeed, Plaintiffs claim that regardless of the entity from which they requested disclosures, they should have received information, in a single report, from two separate companies: Defendant Equifax Workforce Solutions a/k/a TALX Corporation ("TALX"), a nationwide specialty consumer reporting agency that maintains consumer employment data in a database called The Work Number, and Defendant Equifax Information Services LLC ("EIS"), one of the three

major nationwide consumer reporting agencies that maintains consumer credit data in a separate

database.  According to Plaintiffs, anytime a consumer requests disclosures from either of these

separate entities, federal law requires both of them to disclose both its own data and the data that

the other entity collects and maintains separately.  The only apparent basis for this argument is

that TALX and EIS share a corporate parent, Defendant Equifax, Inc., a holding company that is

not engaged in the business of reporting any consumer information to third parties and that

courts around the country have repeatedly held is not a consumer reporting agency subject to the

FCRA.

Plaintiffs' novel reading of the FCRA has no basis in the language of the statute.  If

anything, Plaintiffs' interpretation would turn both a careful statutory structure and fundamental

principles of corporate form on their heads.

This Court should dismiss this Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) for three reasons:

- *First*, Defendant Equifax, Inc. is not a consumer reporting agency and is therefore not subject to the FCRA.

- *Second*, there is no legal basis for Plaintiffs' novel theory of FCRA liability against TALX and EIS.  TALX is a nationwide specialty consumer reporting agency under the FCRA, and EIS is a nationwide consumer reporting agency.  The difference is more than linguistic—the FCRA separately defines and federal agencies separately regulate each entity.  No court has interpreted the FCRA to impose on the two separate entities joint responsibilities to report one another's respective data because there is no authority for such a sweeping interpretation.

- *Third*, even if Plaintiffs' novel theory of liability had a legal basis under the FCRA (and it does not), Plaintiffs cannot establish a willful violation of the FCRA as a matter of law.

For these reasons, this Court should dismiss this action with prejudice.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The FCRA requires a consumer reporting agency—defined as "a person or entity that engages in the practice of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties," *see* 15 U.S.C. § 1681a(f)—to provide consumers with certain reports, upon a consumer's request.   The FCRA separately defines two different types of consumer reporting agencies: (1) a nationwide consumer reporting agency, which compiles and maintains files on consumers on a nationwide basis ("nationwide consumer reporting agency"), 15 U.S.C. § 1681a(p); and (2) a nationwide specialty consumer reporting agency, which compiles and maintains files on consumers on a nationwide basis relating to specific information, such as employment history ("specialty consumer reporting agency"), *see* 15 U.S.C. § 1681a(x).  This case involves an issue of first impression: whether the FCRA requires a nationwide consumer reporting agency to report data collected by a specialty consumer reporting agency owned by the same parent company (and vice versa) when a consumer requests a copy of her credit report from one consumer reporting agency, but not the other.

Equifax Inc. is a leading global provider of information solutions and human resources business process outsourcing services for businesses and consumers.  *See* Equifax, Inc. 2012 Annual Report on Form 10-K ("2012 10-K"), at 2 (the relevant portions of the 2012 10-K are attached as Exhibit 1 to the Declaration of John W. Montgomery, Jr. ("Montgomery Decl."),

attached hereto as Exhibit A).[1]  Equifax Inc. is organized and reports its business results in five operating segments.  *Id.*  The two operating segments that provide and/or monitor credit-related information (U.S. Consumer Information Solutions and North America Commercial Solutions) combine to form EIS, a nationwide consumer reporting agency.  *See id.*  One of the three remaining segments is Workforce Solutions, which provides employment-related information, namely verification and employer services.  *See id.*  (The other two remaining segments are North America Personal Solutions and International, which are not at issue here.  *See id.*)  The Workforce Solutions operating segment runs the Work Number Database, which is a registered trademark of TALX.   *See* Complaint (printout contained between pages 3 and 4).  TALX is a specialty consumer reporting agency.  *See* 15 U.S.C. § 1681a(x)

In the early part of 2013, Plaintiffs allege that they requested copies of their respective credit reports.  *See* Complaint ¶¶ 37, 41.  But Plaintiffs do not allege to which entity or entities they directed their inquiries, nor do Plaintiffs allege how they sought those credit reports, *e.g.* through a website, by an oral request through a toll free number, or by a written communication. *See id.*  Plaintiffs likewise fail to indicate whether they asked for credit-related information only or asked for additional information such as medical or employment-related information.  *See id*.

Plaintiffs allege that they received copies of their "conventional credit reports" in response to their requests.  *See* Complaint ¶¶ 38, 42.  Although Plaintiffs claim that the reports did not include any information from the TALX Work Number Database, there are no

---

[1] Because Equifax, Inc.'s 2012 10-K is a matter of public record and is heavily relied upon by Plaintiffs in the Complaint, the Court may consider it when deciding this Motion, without converting the Motion to a motion for summary judgment.  *See Searls v. Sandia Corp.*, No. 1:14CV578 JCC/TCB, 2014 WL 4793491, at *2 (E.D. Va. Sept. 25, 2014) (citing to *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.2009)) (the court "may properly take judicial notice of matters of public record . . . [and] may also consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic ." ).

allegations that Plaintiffs ever requested a consumer report from TALX.   Nor are there any allegations that Plaintiffs ever inquired as to (1) whether there was any information in the TALX database about them; (2) why information that they believed was in the TALX database was not provided to them; and (3) any inaccuracies in the reports they received based on the failure to include information from the TALX database.   Instead, Plaintiffs filed the instant lawsuit.

## I.   <u>ARGUMENT AND CITATION OF AUTHORITY</u>

To survive a motion to dismiss, Plaintiffs must allege "sufficient factual matter" that is "plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), showing they are entitled to damages and provide "more than labels and conclusions" to proceed with their claims, *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007) (stating that "formulaic recitation of the elements of a cause of action will not do," and "blanket assertion[s] of entitlement to relief" are insufficient). A claim only has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.   Simply reciting the elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6).   *See Adams v. White*, Civil Action No. 1:11CV323, 2011 WL 3875422, at * 3 (E.D. Va. Aug. 31, 2011) (finding that conclusory allegations regarding legal effect of the facts alleged need not be accepted).

Moreover, Congress has expressly limited FCRA claims.   In an attempt to seek the maximum amount of relief, Plaintiffs allege that Equifax, Inc., EIS and TALX willfully violated the FCRA.   *See* 15 U.S.C. §§ 1681n-o (allowing for statutory damages of not less than $100 per violation for willful conduct).   To prove a willful violation of the FCRA, however, Plaintiffs must prove that Defendants' conduct was "knowing" or "reckless."   *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-7 (2007) (defining "willfulness" within the FCRA).   Conclusory

allegations of willful misconduct do not suffice.  *See 56th St. Investors, Inc. v. Worthington Cylinders Mississippi, LLC.,* No. 4:13CV149, 2014 WL 1685922, at \*2 (E.D. Va. Apr. 16, 2014) (finding conclusory statements that defendant's actions were willful were insufficient to meet the plausibility requirement necessary to survive a Rule 12(b)(6) motion to dismiss). *See also Toone v. Wells Fargo Bank, N.S.,* 716 F.3d 516, 523 (10th Cir. 2013); *Bailey v. Equifax Info. Servs., LLC.* No. 2:13-cv-10377, 2013 WL 3305710, at \*6-7 (E.D. Mich. July 1, 2003) (disregarding plaintiff's allegation that "'Equifax willfully failed to follow reasonable procedures'" because plaintiff's allegations were conclusory and "failed to offer any factual support for her claim.").

A.    **Plaintiffs' Claims Against Equifax Inc. Fail as a Matter of Law Because Equifax Inc. is Not Subject to the FCRA.**

Plaintiffs' claims against Equifax Inc. must be dismissed because Equifax, Inc. is not subject to the FCRA.  Plaintiffs have not, and cannot, allege that Equifax, Inc. is in the business of assembling or evaluating consumer information for the purpose of preparing credit reports, or that it prepared credit reports on them—a prerequisite for liability under the FCRA.  *See* 15 U.S.C. § 1681a(f) (defining a "consumer reporting agency" as a person that engages in the practice of assembling or evaluating consumer credit information for the purpose of furnishing consumer reports to third parties); *id*. § 1681g(a)(1) (mandating that every consumer reporting agency provide a clear and accurate disclosure of all information in the consumer's file at the time of the request).  Only "consumer reporting agenc[ies]" as defined by the FCRA have obligations under the FCRA; if an entity is not a "consumer reporting agency," then it can have no FRCA liability.

Federal courts consistently have held that, based on the plain language of the FCRA, plaintiffs cannot maintain FCRA claims against Equifax Inc. and that Equifax, Inc. may not be held liable under the FCRA for actions taken by its subsidiaries.  *See Greear v. Equifax, Inc.,*

5:13-cv-11896, 2014 WL 1378777, at * 1 (E.D. Mich. Apr. 8, 2014) (granting summary judgment to Equifax because it is not a consumer reporting agency subject to the requirements of the FCRA); *see also Channing v. Equifax, Inc.*, 5:11-cv-00293-FL, 2013 WL 593942 (E.D. N.C. Feb. 15, 2013) (same); *Ransom v. Equifax, Inc.,* No. 09–80280–CIV, 2010 WL 1258084 (S.D. Fla. Mar. 20, 2010) (same); *Slice v. Choicedata Consumer Servs., Inc.,* 3:04–CV–428, 2005 WL 2030690 (E.D. Tenn. Aug. 23, 2005) (same); *Weiler v. Equifax Inc.*, No. 2:99-CV-936, Doc. 29 at 2-4 (W.D. Pa. Nov. 16, 2000) (unpublished, copy attached hereto as Exhibit B) (same).  The Court therefore should dismiss with prejudice all claims against Equifax Inc.

> **B.**     **EIS and TALX Are Separate Consumer Reporting Agencies and, Therefore, Cannot be Liable as a Matter of Law for Failing to Provide Information from their Respective Databases Jointly.**

The cornerstone of Plaintiffs' novel FCRA claim is that federal law purportedly requires EIS and TALX—two separate entities with separate databases, functions and obligations—to jointly report their respective consumer information in response to a consumer disclosure request to the other entity.  *See* Complaint ¶¶ 49, 51, 57-58.  Nothing in the FCRA obligates EIS and TALX to act as a "joint" national consumer reporting agency.  In fact, the opposite is true.  The FCRA treats EIS and TALX as separate entities with distinct obligations; Plaintiffs would do violence to a detailed statutory scheme to require EIS to report the information TALX collects and vice versa.  Because there is no legal basis for Plaintiffs' claim, it should be dismissed.

The plain language of the FCRA—the starting point for the Court's inquiry when undergoing a statutory construction analysis, *see Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 489-90 (4th Cir. 2014)—unmistakably establishes EIS as an entity distinct from TALX.  EIS is defined as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" or nationwide consumer reporting agency.  *See* 15 U.S.C.

§ 1681a(p).  TALX, on the other hand, is defined as a "nationwide *specialty* consumer reporting

agency," because it only compiles and maintains files on consumers on a nationwide basis

relating to employment history, *see* 15 U.S.C. § 1681a(x) (emphasis added).  *See also* Complaint

¶ 15; CFPB "List of Consumer Reporting Agencies," Montgomery Decl. at Exhibit 2; FTC

Order, attached hereto as Exhibit C, discussed in more detail below.

The difference between EIS and TALX is not just definitional.  Congress clearly imposed

different obligations on different types of consumer reporting agencies.  EIS is obligated to

maintain a centralized source from which the consumer can request information.  *See* 15 U.S.C.

§ 1681j(a)(1)(B).  TALX, however, does not have such an obligation; rather, it need only have a

streamlined process for a consumer to request information. *See* 15 U.S.C. § 1681j(a)(1)(C).

This Court must give meaning to this text and structure and construe the respective provisions to

avoid rendering those legislative choices meaningless or superfluous.  *See also Whigham v.*

*Chase Auto Fin. Corp.*, 826 F. Supp. 2d 914, 919 (E.D. Va. 2011) (citing *Soliman v. Gonzales*,

419 F.3d 276, 283 (4th Cir. 2005) (the Fourth Circuit is "'loath' to read one statutory provision

so as to render another provision of the same statute superfluous."); *see also Clark*, 741 F.3d at

491 (courts must "give effect, if possible, to every clause and word of a statute," and, where

possible, avoid an interpretation that renders any "clause, sentence, or word ... superfluous, void,

or insignificant").

Plaintiffs' apparent reading of the statute—that TALX, a specialty consumer reporting

agency, must report the data of EIS, and vice versa—produces an illogical result.  If TALX

reported the kind of data that EIS reports, it would no longer be a specialty consumer reporting

agency; instead, it would be a national consumer reporting agency subject to all of the FCRA

obligations subject to those agencies.  No distinct, sister company of a national consumer

reporting agency could *ever* be a "specialty" consumer reporting agency if Plaintiffs' novel and unsupportable theory is correct. That cannot be what Congress intended.

The two major federal regulators for the consumer reporting industry agree. Consistent with the plain text and structure of the FCRA, they recognize a meaningful difference between nationwide and specialty consumer reporting agencies. The CFPB contains separate listings for EIS and TALX as distinct consumer reporting agencies. *See* CFPB "List of Consumer Reporting Agencies," Montgomery Decl. at Exhibit 2. The FTC does the same. In a recent consent decree entered into between TALX and the FTC, the FTC recognized TALX as a stand-alone specialty consumer reporting agency subject to the requirements of the FCRA, despite being under the same Equifax Inc. corporate umbrella as EIS. *See generally* FTC Order, Exhibit C.

Moreover, Plaintiffs themselves appear to acknowledge the separateness of the two different consumer reporting agency—at least as a factual matter. As they concede in their Complaint, the TALX database relies upon payroll data received from the organizations to which it has contracts, and TALX is prohibited from using the data after the contract expires. *See* Complaint ¶ 14. This stands in stark contrast to the manner in which EIS gathers its information and the breadth of the information contained in the EIS database. EIS gathers credit-related information from multiple large and comprehensive databases from both third parties and clients themselves. *See* Montgomery Decl. at Exhibit 1, 2012 10-K at 4. Moreover, EIS and TALX are managed by two separate presidents and have separate facilities for their respective databases. *See id.* at 14-15, 21.

Finally, the Fourth Circuit's recent decision in *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 489-90 (4th Cir. 2014), involving the interplay of provisions in the Fair Debt Collection Practices Act ("FDCPA"), confirms that the Court must giving meaning to the

legislative choice to separately delineate nationwide and specialty consumer reporting agencies. The consumers in *Clark* argued that a debt collection notice's mandate that the consumer submit a written communication to challenge the validity of a debt violated the FDCPA, namely Section 1692g(a)(3), which allows for an oral notice of a dispute. *Clark*, 741 F.3d at 489. In response, the debt collectors argued that Section 1692g(a)(3) contains an inherent writing requirement and therefore moved to dismiss the Clarks' complaint. *Id.* The Fourth Circuit rejected the debt collectors' argument, reasoning that, although some sections of the FDCPA included an express writing requirement, the section at issue did not; the court, therefore, would not read words into the statute that were not there. *Id.* at 490. Instead, the court followed one of the fundamental canons of statutory construction: "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* at 490-91 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Just as the Fourth Circuit in *Clark* refused to allow the debt collector to impose requirements beyond those set forth by Congress in the FDCPA, there is nothing in the plain text of the FCRA that requires EIS and TALX to combine separately gathered and stored information in response to any consumer disclosure request that either entity receives. Plaintiffs could have easily obtained the information contained in both the EIS and TALX databases by making two requests to the two separate toll free numbers and/or websites that each agency has provided to the public and of which Plaintiffs are aware. But they did not. That does not mean that the FCRA requires EIS and TALX to do more than the statute's plain language requires, however. Plaintiffs' efforts to impose additional requirements on EIS and TALX fail as a matter of law, and their claims should be dismissed.

**C.      There is no Support for Plaintiffs' Willfulness Claim, and it Therefore Fails as a Matter of Law.**

Plaintiffs' claim of willfulness rests solely upon conclusory allegations unsupported by law.  Because Plaintiffs' FCRA claim is novel, there is no precedent at all to suggest that EIS and TALX are obligated to report one another's data—much less that the failure to do so would be a willful violation of the FCRA.  Plaintiffs' claims of willful violations of the FCRA, therefore, should be dismissed.

To support their allegations of willfulness, Plaintiffs have done nothing more than to simply mimic the language set forth in the FCRA and claim that "Defendants'" conduct was willful, *see* Complaint ¶¶ 51-52.  That does not satisfy *Iqbal* and *Twombly*.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  *See Twombly*, 550 U.S. at 555 (stating that "formulaic recitation of the elements of a cause of action will not do," and "blanket assertion[s] of entitlement to relief" are insufficient); *56th St. Investors, Inc.,* 2014 WL 1685922, at *2 (finding conclusory statements that defendant's actions were willful were insufficient to meet the plausibility requirement necessary to survive a Rule 12(b)(6) motion to dismiss).

Nor could Plaintiffs substantiate these threadbare allegations.  There is no precedent to support a claim of willfulness on such a novel theory.  Because there is no authority within the FCRA or elsewhere that mandates EIS and TALX combine separately maintained information in separate databases into a single report, there cannot have been a willful violation of the FCRA. *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69 (2007) (finding that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless").

In *Safeco*, the Supreme Court declined to find liability under the FCRA as Defendant Safeco's reading of the statute was not objectively unreasonable (the reading had a foundation in the statutory text), and there was no guidance from the courts of appeals or FTC that might have warned Safeco away from the view it took. 551 U.S. at 69-70. "Given this dearth of guidance and the less-than-pellucid statutory text, *Safeco's* reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id.* at 70.

The same reasoning applies here. There is no basis to claim that EIS and TALX took objectively unreasonable views of the FCRA when EIS provided only the credit-based information in the EIS database when Plaintiffs requested copies of their credit reports. There is also no case law considering how the FCRA applies when two distinct legal entities defined separately in the statute are alleged to be operating jointly and collectively as a single entity with a singular set of obligations. And the FTC has never spoken on this issue. "Given this dearth of guidance," *Safeco*, 551 U.S. at 70, and no clear statutory provision requiring EIS and TALX to report one another's data, there is no legal basis to support a willful violation of the FCRA. Because Plaintiffs' willfulness claim fails as a matter of law, Count I, the class claim, should be dismissed in its entirety.

Moreover, Plaintiffs' attempt to claim willfulness by arguing that EIS has been sued previously for allegedly failing to establish or follow reasonable procedures and has not modified its procedures accordingly, *see* Complaint at ¶¶ 53-55, falls woefully short. As an initial matter, simply because the complaints in the referenced cases absent one[2] may have contained allegations that EIS failed to establish or follow reasonable procedures does not equate into

---

[2] Plaintiffs' citation to *Baker v. TransUnion, LLC*, 3:07-cv-107 (E.D. Va. 2007), is especially curious as neither EIS nor any other Equifax-related entity was a Defendant in that action.

findings that such allegations are true.  In fact, there is not a single ruling to that effect.  In the one published case cited by Plaintiffs, *Mullins v. Equifax Information Services, LLC*, 3:05cv888, 2007 WL 2471080 (E.D. Va. Aug. 27, 2007), neither the opinion nor the trial dealt with EIS at all, despite the caption; rather, the opinion involved issues raised by a co-defendant, TransUnion, regarding the accuracy of the credit report and reinvestigation process it undertook.  Likewise, in *Saunders v. Branch Banking and Trust Co.*, 3:05cv731 (E.D. Va.), the issue dealt with a furnisher's responsibility under the FCRA , and likewise did not involve EIS (*see Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008)).  In *Ross v. Experian Information Solutions, Inc. et al.*, 3:09-cv-1444 (E.D. Va. 2009) and *Pace v. Equifax Information Services, LLC*, 3:11-cv-554 (E.D. Va. 2012), the cases were settled and voluntarily dismissed without rulings on Plaintiffs' allegations.  None of these prior court rulings provide any basis to support Plaintiff's willfulness claims, which should be dismissed.

## II.    CONCLUSION

As a result of the foregoing, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted this 8th day of December, 2014.

/s/
John W. Montgomery, Jr.
Virginia State Bar No. 37149
Counsel for Equifax Information Services LLC
John W. Montgomery, Jr., Attorney, PLC
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone (804) 355-8744
Facsimile (804) 355-8748
Email: jmontgomery@jwm-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2014, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Leonard Anthony Bennett
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601

Matthew James Erausquin
Casey S. Nash
Consumer Litgation Associates PC (Alex)
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314

/s/
John W. Montgomery, Jr.
Virginia State Bar No. 37149
Counsel for Equifax Information Services LLC
John W. Montgomery, Jr., Attorney, PLC
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone (804) 355-8744
Facsimile (804) 355-8748
Email: jmontgomery@jwm-law.com

.