**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

CHAUNA JONES f/k/a CHAUNA CRAWLEY,
TYRONE HENDERSON, on behalf of themselves
and all other similarly situated individuals,

                    Plaintiffs,

v.                                         Case No.: 3:14-cv-678-MHL

EQUIFAX, INC., in its own name and t/a
EQUIFAX WORKFORCE SOLUTIONS
a/k/a TALX CORPORATION and
EQUIFAX INFORMATION SERVICES LLC,

                      Defendants.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COME NOW the Plaintiffs, by counsel, and for their Memorandum in Opposition to Defendants' Motion to Dismiss, they state as follows:

**INTRODUCTION**

Defendants prosecute this motion because – plainly – they disagree with the facts alleged in the Complaint. Jones and Henderson allege facts sufficient to make a plausible claim that Defendants violated the federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*. Defendants operate as a unified consumer reporting agency (CRA) that sells consumer reports under different corporate entities from the same pool of data, markets the data as a unified pool of information and otherwise does not maintain

any of the separateness required for the cross selling of data if the Defendants are not treated as a single CRA.[1]

Defendants' Motion requires a very selective reading of the Complaint – ignoring most of the substantive and relevant allegations. And it depends upon an irrational framing of the issue at hand as one solely of piercing the corporate veil, in the face of the specific provisions of the Fair Credit Reporting Act which contemplate that an entity might attempt to structure itself to avoid FCRA governance and prohibit actions taken to effectuate the same.

For the reasons stated herein, Defendants' motion should be denied.

## ARGUMENT

This Court recently summarized "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Great Am. Ins. Co. v. GRM Mgmt., LLC*, No. 3:14CV295, 2014 WL 6673902, at *1 (E.D. Va. Nov. 24, 2014). Plaintiff will not burden the Court with its repetition here. Suffice it to say that Plaintiffs' detailed factual allegations must be accepted as true and, as shown below, demonstrate that Plaintiffs have stated a claim under the FCRA for the relief they have requested. The disputes raised by Defendants are not legal, but factual. The largest divide between the Plaintiffs' position and Equifax's arguments is the Parties' understanding of Rules 8(a)(2) and 12(b)(6). While Defendants prefer a plaintiff to outline in full detail all facts that might be offered on summary judgment or at trial, a complaint actually satisfies Rule 8 if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R.

---

[1] As discussed in greater detail herein, the Equifax entities do not follow the requirements to operate as a seller CRA and a separate "reseller" CRA,. See e.g. 15 U.S.C. §§ 1681

2

Civ. P. 8(a)(2). In this case, Plaintiffs have alleged sufficient detail by which Equifax can answer and by which the Court can determine the plausibility of their claims.

### A. THE COMPLAINT PLAUSABLY ALLEGES THAT EQUIFAX, INC. AND ITS SUBSIDIARY EIS OPERATE AS A SINGLE UNIFIED CONSUMER REPORTING AGENCY.

The Defendants are Equifax, Inc. in its own name and trading as Equifax Workforce Solutions a/k/a TALX Corporation, as well as Equifax Information Services, LLC (Together, "Defendants" or "Equifax"). (Complaint, ¶ 9). Defendants operate as a single FCRA governed "consumer reporting agency." Equifax, Inc. has structured itself in order to warehouse its sale of credit-reporting consumer reports in one entity and its sale of employment, payroll, and income-records consumer reports in a second entity. (*Id*, ¶2). Defendants together maintain a collective set of databases that – for Defendants' day-to-day use are treated as an integrated pool of information on consumers. (*Id*, ¶¶ 11-12). One of those databases is directly operated by Equifax, Inc. – the WorkNumber. (Id., ¶¶ 9). Very clearly, "The WorkNumber" data is used for FCRA purposes and is of the nature of FCRA protected data. (*Id*., ¶¶ 3,13-31).

Each Defendant is a CRA. (*Id*., ¶ 32). Equifax freely transfers data between units and operates without any impediments of corporate structure. In almost every material regard, the Equifax units operate as if they are one and the same, a single "consumer reporting agency." (*Id*.) Equifax is a 'consumer reporting agency' as defined in 15 U.S.C. §1681(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties. (*Id*, ¶ 10). By their own admissions, each of the Equifax entities is integrated as

3

a single national credit reporting agency, with all databases marketed and made available to each of Equifax's customers regardless of structure or category of content. (*Id.*, ¶ 34). Defendants operate collectively and jointly as a national "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). (*Id.*, ¶35). Equifax, Inc. which trades as "Talx Corporation" and "The WorkNumber", even states on its website, "Under FCRA, we are a Consumer Reporting Agency and subject to its requirements." (*Id.*,¶ 36).

The Plaintiffs requested a full copy of their credit files from the Defendants. When the Defendants responded to the Plaintiffs, they refused to disclose any information from their Work Number Database. (*I*d., ¶ 5).

To support their motion, Defendants ignore these allegations and instead improperly try and refute them with their own facts. First, they mischaracterize Plaintiffs' argument, stating that the as, "[W]hether the FCRA requires a nationwide consumer reporting agency to report data collected by a specialty consumer reporting agency owned by the same parent company (and vice versa) when a consumer requests a copy of her credit report from one consumer reporting agency, but not the other." (Docket No. 18, Def. Mem., at 3). This is NOT the issue. The Plaintiffs' action is based on the allegation that the two corporate entities constitute a single CRA, regardless of how Equifax has decided to structure itself.

Equifax itself tries to use its cited 10-k report, and while this is of course not the type of document that is properly incorporated into a Rule 12(b)(6) opposition, the Defendants' attempt actually confirms Plaintiffs' argument: "Equifax Inc. is organized and reports its business results in five operating segments. The two operating segments that provide and/or monitor credit-related information[.]" (*Id*. at 4, citing Equifax Inc.'s

4

2012 10-k report).[2] An "operating segment" is by definition a component and part of a single corporate entity:

> **Identification of operating segments**
> IFRS 8 defines an operating segment as a component of an entity:
> - that engages in revenue earning business activities
> - whose operating results are regularly reviewed by the chief operating decision maker. The term 'chief operating decision maker' is not as such defined in IFRS8 as it refers to a function rather than a title. In some entities the function could be fulfilled by a group of directors rather than an individual and
> - for which discrete financial information is available.

http://www.accaglobal.com/us/en/discover/cpd-articles/corporate-reporting/ifrs8-operating.html last visited January 8, 2015.[3] S.E.C. financial statement standards are similar:

> Under the new accounting standard, an operating segment is a component of a business, for which separate financial information is available, that management regularly evaluates in deciding how to allocate resources and assess performance. Specifically, SFAS No. 131 states that an operating segment is a component of a business:
> * that engages in activities from which it may earn revenues and incur expenses (including revenues and expenses relating to transactions with other components of the same business);
> * whose operating results are regularly reviewed by the enterprise's "chief operating decision maker" to make decisions about resources to be allocated to the segment and assess its performance; and
> * for which discrete financial information is available.

S.E.C. Segment Reporting Final Rules, https://www.sec.gov/rules/final/33-7620.txt last visited January 8, 2015. By Defendant's own admission, both the conventional credit

---

[2] Equifax inserts that "U.S. Consumer Information Solutions and North America Commercial Solutions ... combine to form EIS, a nationwide consumer reporting agency[.]" (*Id.* at 4). But this is not what the 10-K text Defendants cite actually says.
[3] ACCA (the Association of Chartered Certified Accountants) is the global body for professional accountants.

reporting and the WorkNumber segment are segments of the same enterprise, and even same entity. With the same control; the same "chief operating decision maker."

Equifax, Inc. and EIS may try and deny these factual allegations – somehow, but the allegations at this posture more than support a plausible claim that the Defendants are a single operating CRA. How Defendants then segment their data for marketing and operations purposes is immaterial. An "EIS" branded credit report may contain data that Equifax categorizes as "credit reporting" data as well and information it categorizes as "WorkNumber" data", and vice versa. How it brands its reports and what business segment it uses to deliver or sell them is immaterial. Plaintiffs' Complaint plausibly alleges that Defendants operate as a single CRA.

Equifax's argument is largely based upon its narrow and conventional reliance upon corporate formalities – corporation X is not responsible for the debts of corporation Y. That veil-piercing mindset is not relevant for the question of whether the Defendants operate together as a CRA. This case is brought under a federal statute – the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. Determination as to whether to ignore the corporate veil in determining substantive liability of a party under a federal statute is governed by federal, rather than state law as the "doctrine of piercing the corporate veil is not a mere procedural rule or mere judgment enforcement mechanism, but substantively determines who is liable" under the federal statute. *Thomas v. Peacock*, 39 F.3d 493, 500-502 (4th Cir. 1994) (Applying this principal to an ERISA action). The standard adopted by the Fourth Circuit in *Thomas* was what it described as the "liberal veil-piercing standard" enunciated by the First Circuit:

> The general rule adopted in the federal cases is that "a corporate entity may be disregarded in the interests of public convenience, fairness and

> equity," [citing *Capital Telephone Co. v. FCC,* 498 F.2d 734, 738 (D.C.Cir.1974) ]. In applying this rule, <u>federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form</u> [citations omitted], an inquiry that usually gives less respect to the corporate form than does the strict common law alter ego doctrine.... (Emphasis added).

*Thomas*, 39 F.3d 503-304 citing *Alman v. Danin,* 801 F.2d 1, 3-4 (1st Cir.1986) and *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981). Thus, for example, while the state common law threshold could arguably require more, the federal threshold for finding one entity an *alter ego* of another includes circumstances in which "adherence to the corporate fiction [would …] lead to an evasion of legal obligations." *Thomas*, 39 F.3d 504 (citations omitted).

Though largely superfluous, the Complaint in fact provides greater detail and specificity than has been held necessary under *Twombly/Iqbal* in pleading alter ego/veil piercing. For example, In *The Flexible Benefits Council v. Feltman*, 1:08cv371, 2008 WL 2465457, *7 (E.D. Va. 2008), Judge Cacheris rejected a corporate veil Rule 12(b)(6) argument against a Complaint that principally alleged, "Upon information and belief, all of the above actions were performed in concert with Defendants Feltman and ECFC, Ltd., as well as with other associates currently unknown to plaintiff." *Feltman* Complaint, ¶50. Similar conclusions were reached in cases with varying degrees of pleading detail. *See e.g. Osgood v. Midwest Parking Solutions*, 2009 WL 4825192 (E.D. Mo. Dec. 11, 2009) (finding plaintiffs' allegations of the individual's control and dominance of the corporate entity sufficient to survive a motion to dismiss); *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp.2d 594 (N.D. Cal. 2007) (denying motion to dismiss alter ego claim against individual who controlled corporate defendant). Indeed, in *Maganallez,* the court noted that an allegation "that one of the major shareholders has

7

'essentially full operational control' over [the defendant] during a specific period was sufficient to justify allowing plaintiffs to proceed on an alter ego theory." *Id*. at 608 (citing In re Napster, Inc. Copyright Litig., 354 F. Supp.2d 1113, 1122 (N.D. Cal. 2005)). In *Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial, Marine Cleaning, Inc.*, 850 F. Supp. 905 (D. Or. 1994), the plaintiffs alleged merely "that Allstate and another defendant shared the same corporate offices, used the same employees, performed the same type of work, and interchanged vehicles, real property and assets." This was sufficient to state a claim for alter ego liability, as Plaintiffs' allegations are here. *See also CitiMortgage, Inc. v. NL, Inc.*, 2010 WL 1610411 (E.D.Mo. April 21, 2010); *McWilliams Ballard, Inc. v. Level 2 Development*, --- F.Supp.2d ----, 2010 WL 1068917 (D.D.C. March 24, 2010) (Applying Virginia common law); *Trabucco v. Intesa Sanpaolo, S.P.A.*, --- F.Supp.2d ----, 2010 WL 991621, *7-8 (S.D.N.Y. March 19, 2010).

Presently, the core dispute is whether Defendants operate as a "nationwide consumer reporting agency." The Complaint alleges that they do. Defendants' response is that the Complaint should be dismissed because they claim to have manufactured a corporate structure that separates the marketing and use of the Equifax's data between multiple controlled entities. This attempted "evasion of legal obligations" otherwise imposed by the FCRA through "creative" corporate structuring is addressed head-on in applicable FCRA regulations. The Federal Trade Commission, at the time responsible for enforcement of the FCRA, promulgated regulations almost exactly on point to the Equifax Defendants. *See* 16 C.F.R. Part 611. Part 611 is titled "Prohibition Against Circumventing Treatment as a Nationwide Consumer Reporting Agency" and in relevant

8

part states:

> (a) A consumer reporting agency shall not circumvent or evade treatment as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis' as defined under section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. 1681a(p), by any means, including, but not limited to:
>
> (1) Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency[.]

16 C.F.R. Part 611.2. While the Plaintiffs' allegations and Defendants' descriptions of the structural insulation attempted by Equifax would appear on all fours with the blanket prohibition in Part 611, the FTC examples of prohibited activity even more precisely fit Equifax. These include "(1) *Circumvention through reorganization by data type.*" In this illustration of a corporate structuring example that would not be recognized as a bar to FCRA governance, the FTC proposed the following:

> XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603 (p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section. […]

*Id*. Similarly, for another of the three illustrated prohibited examples, the FTC offered:

> (3) *Circumvention by a newly formed entity.* […] . Smith Co. organizes itself into two affiliated companies: Smith Credit Co. and Smith Public Records Co. Smith Credit Co. assembles and maintains credit account information from persons who furnish that information regularly and in the ordinary course of business on consumers residing nationwide. Smith

9

> Public Records Co. assembles and maintains public record information on consumers nationwide [.]

*Id.* In applying the federal standard adopted in *Thomas*, this Court cannot reasonably conclude that the FCRA's purpose "places importance on the corporate form." To the contrary, the FCRA expressly cautions that corporate form is irrelevant and that the use of corporate associations and structures to avoid its application are prohibited.

The Court could consider a comparable absurdity – currently Equifax sells a conventional credit report that includes data from various banks, debt collectors and lenders ("furnishers"). If Equifax decided to create one corporation that it claimed technically owned the "Bank of Americas" database containing all Bank of America reported account information, and a second entity to hold every other lender's data, but both entities sold a credit report exactly like it did before this restructuring and containing all lenders (including Bank of America), if a consumer requested her consumer file from either one, she must receive the full report including all of the data from the databases each entity regularly accesses.

Equifax's and EIS' argument also fails for another reason. Even if the Court somehow concludes that the Defendants do not operate in a manner to be considered a single CRA, they are each obligated to provide the full file on each consumer. And the "file" consists not only of information stored in the database at that defendant's facility, but all information that could be included in a consumer report it may sell. The Third Circuit heard and rejected the same argument made by Trans Union under weaker circumstances – where the separate data that "could be" accessed by Trans Union was maintained in a database operated by an unrelated third party. The Court of Appeals rejected that argument:

> Trans Union concedes that Cortez requested her credit report on multiple occasions; nevertheless, it failed to provide her with the HAWK and OFAC alert information on her report. However, Trans Union again makes an argument similar to that discussed above. It argues that the OFAC and HAWK information is not part of the consumer's "file" under the FCRA and that, it was not required to disclose the information to Cortez.
>
> The FCRA defines "file" when used in connection with information on any consumer, as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). Trans Union attempts to avoid the obvious reach of that language by relying on the fact that the SDN List information was not part of its database; rather, as explained earlier, that information was separately maintained by Accuity. According to Trans Union, the information should not be considered part of the consumer's file for purposes of the FCRA.[26] Not surprisingly, Trans Union cites no cases to support this argument. The argument requires us to ignore that the FCRA specifically provides that the duty of disclosure applies to "information on [a] consumer ... regardless of how the information is stored." 15 U.S.C. § 1681a(g). We do not believe that Congress intended to allow credit reporting companies to escape the disclosure requirement in § 1681a(g) by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report.
>
> **Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report**. *Gillespie v. Trans Union Corp.,* 482 F.3d 907, 909 (7th Cir.2007). Moreover, as the court in *Gillespie* noted, " 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id.* (quoting 16 C.F.R. pt. 600, app. § 603).

*Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010) (emphasis added). Thus, when Plaintiffs and the putative class requested their disclosure from EIS, even if it was not an integrated CRA with Equifax, Inc., EIS was obligated to provide the full file – to include not only its own credit tradeline items, but also the WorkNumber data it regularly sells. Either way, at this stage Plaintiffs have more than alleged a plausible claim.

Equifax raises a couple odd arguments related to how it has represented itself to

11

other litigants or agencies in the past. Plaintiffs have already discussed Equifax's attempt to use its own 10-k report. That document would have been objectionable as hearsay or properly challenged in discovery if it contained anything to assist defendants.

Defendants also cite several FCRA decisions that found that Equifax, Inc. was not a CRA. (Docket No. 18, Def. Mem. at 6-7). All but one (*Greear*) was a *pro se* case. Every one was on Summary Judgment with actual evidence offered by Equifax, Inc. (and largely not responded to or refuted by the litigant). None found that Equifax, Inc. was a CRA as a matter of law, rather than fact. And none addressed the arguments, allegations and positions presented in this case.

Defendants' similarly argues that it can only be a "nationwide specialty consumer reporting agency" because a document put out by the Consumer Financial Protection Bureau lists "Talx Corporation" as such a CRA and a consent order entered between the FTC and Talx states that it was such a business. But the 2009 FTC agreement itself is not indicative of anything beyond that Talx at that time agreed it was subject to the FCRA provisions applying to specialty CRAs. The CFPB list goes even further, stating that,

> This list includes entities that have identified themselves as consumer reporting companies, or have indicated when they provide consumers access to their consumer reports. The list incorporates information from the companies' own self-descriptions that has not been independently verified by the CFPB. This list doesn't cover every company in the industry. It is not intended by the CFPB to be all-inclusive. Nor does it reflect any determinations by the CFPB as to whether any particular entity is subject to the Fair Credit Reporting Act or any part thereof.

(Docket No. 18-3, at 1, n.1).

Based upon a mischaracterization of Plaintiffs' position, Defendants argue, "No distinct, sister company of a national consumer reporting agency could *ever* be a "specialty" consumer reporting agency if Plaintiffs' novel and unsupportable theory is

12

correct." (Docket No. 18, Def. Mem., at 8-9). But this is not what Plaintiffs have alleged. It is not common ownership that matters, but common use of a FCRA-governed database. And if the Defendants were characterized as Plaintiffs allege – as a unified CRA, and thus a unified nationwide consumer reporting agency – this would expand the rights of consumers such as the Plaintiffs and the putative class. The protections available as such a CRA are greater (as Equifax acknowledges). And this is really the reason Defendants do not want to be governed as such a unified entity. They would be obligated to provide a substantial number of rights, notices and remedies that they have structured their business.

Equifax's argument is really premised on its core assumption that it (the WorkNumber) is unquestionably a "nationwide specialty consumer reporting agency. It does not of course have to be so characterized. Plaintiffs plausibly allege that it is more. On Summary judgment, they will prove it.

### B. PLAINTIFFS ADEQUATELY PLED A WILLFUL VIOLATION.

Courts have routinely found that "the willfulness issue cannot always be resolved at the motion to dismiss stage since it may involve facts beyond the pleadings. *See, e.g.*, *Troy v. Home Run Inn, Inc.*, 2008 WL 1766526, at *2 (N.D.Ill.2008) (finding that the plaintiff had alleged sufficient facts regarding willfulness under the notice pleading standard); In re TJX Companies, Inc., 2008 WL 2020375, at *2 (D.Kan.2008) (finding that plaintiff alleged sufficient allegations of willfulness); *Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1210 (C.D.Cal.2007) (stating that "[w]illfulness under the FCRA is generally a question of fact for the jury"). The Rule 12(b)(6) standard for FCRA willfulness is no different for cases brought under the FCRA, including those which set forth claims that a consumer reporting agency acted in willful violation thereof. As the

13

Eastern District of Pennsylvania observed in an FCRA case, relying on post-*Twombly* decisions, "nothing in *Twombly, Iqbal*, or *Fowler* has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review . . . [Rule 8] requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations." *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 431 (E.D. Pa. 2010) (citations omitted) (denying motion to dismiss willfulness in FCRA claims).

Equifax asserts that Plaintiffs failed to properly plead that Defendants willfully violated the FCRA because it merely mimicked the text of the violation. It may be that Equifax has simply re-used that text from a brief in a different case. In this action, Plaintiffs have made willfulness allegations that do substantially more than mimic § 1681g or § 1681n.

The Complaint alleges, "Defendants are well aware of their obligations under the Fair Credit Reporting Act." (Complaint, ¶¶ 48, 49; *see also* ¶ 36). However, "Despite the Defendants' governance by the FCRA, they operate as if the law does not exist." (*Id*., ¶ 3). In operation, Defendants admit the allegations made that they are an integrated CRA. (*Id*., ¶¶ 32-34). Defendants' "obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission." (*Id*., ¶ 49). It admits of such knowledge and obligations under the FCRA to provide free and complete consumer file disclosures. (*Id*., ¶ 50). The Complaint alleges that "despite knowing of these legal obligations, the Defendants acted consciously in breaching their known duties and deprived the Plaintiffs and other members of the class of their rights under the FCRA" and that "Defendants' conduct was not a mere mistake or accident. Instead, it was the intended result of their standard operating procedures." (*Id*., ¶¶ 51, 52).

Courts have repeatedly found at the Rule 12(b)(6) stage that "assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Singleton v. Domino's Pizza, LLC*, No. CIV.A. DKC 11-1823, 2012 WL 245965, at *1 (D. Md. Jan. 25, 2012), at *4; *Romano v. Active Network Inc.*, No. 09 C 1905, 2009 WL 2916838, at *3 (N.D. Ill. Sept. 3, 2009), at *3 (citing the plaintiff's assertion that the defendant had repeatedly violated FACTA when concluding that the complaint's allegations of willfulness were sufficient to survive a motion to dismiss); *Freckleton v. Target Corp., et al*. 1:14cv807, Dkt. No. 56, at 17 (D. Md. Jan. 12, 2015) (Denying motion to dismiss on willfulness based on allegation that the plaintiff "alleged that knowing that First Advantage gathered information subject to the FCRA, Target chose not to comply with the FCRA notification requirements."); *Dennis v. Trans Union, LLC*, C.A. 14-2865, 2014 WL 5325231, at *8 (E.D. Pa. Oct. 20, 2014) (rejecting a motion to dismiss allegations of willfulness where plaintiff had "specifically identifie[d] a practice that allegedly violates FCRA rules."). *See also Cappetta v. GC Servs. Ltd. P'ship*, 654 F. Supp. 2d 453, 462 (E.D. Va. 2009) (Denying a Rule 12(b)(6) motion on FCRA willfulness on comparable allegations).

Courts have also ruled that assertions that the "defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegations of willfulness." *Singleton*, 21012 WL 245965, at *4-5 ("Plaintiffs assert that Domino's was aware—through its "general counsel's office and outside employment counsel"—that the FCRA requires employers to provide employees with copies of background checks before taking adverse action against them. (ECF No. 19 ¶ 65). According to the complaint, Domino's disregarded the FCRA by "typically" failing to provide employees

with copies of their background checks."); s*ee also Kubas*, 594 F.Supp.2d at 1031–32 (denying a motion to dismiss where a plaintiff alleged that a defendant acted willfully by failing to comply with FACTA after credit card issuers had informed it of the law's requirements); *see also Zaun v. Tuttle, Inc.*, 2011 WL 1741912, at *2 (concluding that a plaintiff had sufficiently alleged willfulness by asserting that the defendant was aware of FCRA requirements, via information provided by a trade association, had the ability to comply with those requirements, and simply decided not to do so). Such allegations are consistent with the case law above and undoubtedly satisfy Rule 8.

Further, courts "can reasonably infer that [a defendant's] repeated engagement in the same type of objectionable conduct without justification could, at minimum, rise to a level of reckless disregard." *Smith*, 711 F.Supp.2d at 435 (citing *Sheffer v. Experian Info. Solutions, Inc.*, 2003 WL 21710573, at *3 (E.D.Pa. Jul. 24, 2003) (noting that a willful violation may be found "where the evidence shows that inaccuracies in credit reports arise from something more than 'an isolated instance of human error which [the agency] promptly cure[s].'"). As reflected by the allegations in the Complaint, Defendants' violations were more than an isolated human error. In fact, Plaintiffs allege that they were intentional. Thus, Plaintiffs more than adequately alleged repeated conduct to rise to a level of recklessness.

Defendants' claim that it should be excused from a willful violation because there may be limited appellate court or FTC decisions on these issues. But this is not the lesson imposed by Safeco. Judge Gibney effectively addressed (and rejected) the exact same argument in a comparable Rule 12(b)(6) posture:

> Boyd's failure to cite "*any authority* holding that" CEVA's interpretation of § 1681b(b)(2) is incorrect is neither surprising nor helpful to the

16

> defendant. The absence of authority contrary to CEVA's interpretation, "is not dispositive," but "merely establishes that the issue has not been presented to a court of appeals before." *Fuges,* 707 F.3d at 253, n. 21 (quoting *Cortez v. TransUnion, LLC,* 617 F.3d 688, 722 (3d Cir.2010)). The absence of judicial or regulatory interpretation does not give the defendant a free ride under the FRCA. *Id.* When, as here, a statute presents a clear, cognizable command, the fact that courts have not troubled themselves to parse its meaning does not act as an indictment of the statute's ambiguity. In the instant case, § 1681b(b)(2) does not present a complicated exercise in statutory interpretation; asserting that the lack of judicial discussion concerning the statute's meaning—more than 20 years after its passage—indicates its textual uncertainty or ambiguity is illogical.

*Boyd v. CEVA Freight, LLC*, No. 3:13-CV-00150-JAG, 2013 WL 6207418, at *7 (E.D. Va. Nov. 27, 2013).

Regardless, Defendants are also wrong. The Third Circuit has addressed the very issue presented in this case and as long ago as 2010. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711 (3d Cir. 2010) ("Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report). A CRA must disclose not only information it maintains in its own database, but also information it may furnish even if it is stored in a database at a different entity.

Finally, Plaintiff Henderson fairly and plausibly alleged that Equifax furnished information about him that did not belong to him and was logically inconsistent. Equifax's only challenge to Count 2 (§ 1681e(b)) is that the allegations in the Complaint as to willfulness are insufficiently detailed because not all of the "prior notice" cases apply. But for the purposes of surviving a Rule 12(b)(6) motion, the allegations in paragraphs 52-58 more than meet this early standard. Certainly a jury could find that at a minimum these inconsistencies should have placed Equifax on notice that something out of the ordinary existed in this file. In addition to the *a priori* obligation to vet and consider the accuracy and reliability of data when first reported, a CRA must also be aware of patterns or indicia of

17

suspect reliability of its reported data.   16 C.F.R. Part 600 FTC Commentary Appendix 607 (3)(A). ("[W]hen a consumer reporting agency learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise) it must review its procedures for assuring accuracy.")  As the FTC has cautioned, "A CRA must accurately transcribe, store and communicate consumer information received from a source that it reasonably believes to be reputable, in a manner that is logical on its face. ... Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent. … A CRA must maintain procedures to avoid reporting information with obvious logical inconsistencies." *See* "40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary Interpretations," at 67-68, 81 (2011).[4] As the Fourth Circuit found in *Dalton v. Capital Associated Indus., Inc.*, "This case is easily grouped within the 'overwhelming majority of cases'" in which "[t]he issue of whether the agency failed to follow 'reasonable

Under the more liberal federal threshold – one in which a "corporate entity may be disregarded in interest of public convenience, fairness and equity; in particular, corporate form may not defeat overriding federal legislative policies" *Thomas v. Peacock*, 39 F.3d 493 (4th Cir. 1994) – Defendants efforts to structure their operations to circumvent FCRA governance must necessarily fail.

## CONCLUSION

---

[4] http://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

For the reasons stated herein, Defendants' Motion to Dismiss should be denied.[5]

>
> Respectfully submitted,
> **PLAINTIFFS**
> By: /s/_____
> Of Counsel

Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: (703) 273-7700
Fax: (888) 892-3512
matt@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB, #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1A
Newport News, VA 23601
Tel: (757) 930-3660
lenbennett@clalegal.com

*Counsel for the Plaintiffs*

---

[5] In the event that the Court somehow grants Defendants' motion, Plaintiffs herein ask for leave to file an Amended Complaint.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day January 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John W. Montgomery, Jr.
John W. Montgomery Jr. Attorney PLC
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Tel: 804-355-8744
Fax: 804-355-8748
Email: jmontgomery@jwm-law.com


John A. Love (*pro hac vice*)
Zachary A. MyEntyre (*pro hac vice*)
King & Spalding, LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Tel: 404-572-4600
Fax: 404-572-5100
tlove@kslaw.com
zmcentyre@kslaw.com
*Counsel for the Defendants*

/s/_____
Leonard A. Bennett, VSB, #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1A
Newport News, VA 23601
Tel: (757) 930-3660
lenbennett@clalegal.com