**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

CHAUNA JONES f/k/a CHAUNA CRAWLEY,
TYRONE HENDERSON, on behalf of themselves
and all other similarly situated individuals,

    Plaintiffs,

v.                                                         Case No.: 3:14-cv-678-MHL

EQUIFAX, INC., in its own name and t/a
EQUIFAX WORKFORCE SOLUTIONS
a/k/a TALX CORPORATION and
EQUIFAX INFORMATION SERVICES LLC,

    Defendants.

**REPLY BRIEF IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

Defendants moved to dismiss this action because the text and structure of the Fair Credit Reporting Act ("FCRA") confirm that there is no legal basis for Plaintiffs' novel legal theory that the FCRA treats two separate legal entities as one. Rather than addressing this plain-language argument, Plaintiffs attempt to muddy the waters by creating factual disputes that are irrelevant to the Court's disposition of Defendants' motion. Even if Plaintiffs' threadbare factual allegations regarding how Equifax Information Services LLC ("EIS") and TALX Corporation ("TALX") purportedly conduct their respective businesses were relevant (and they are not), the allegations cannot survive scrutiny under *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v Twombly,* 550 U.S. 544, 555 (2007). Plaintiffs have not alleged sufficient facts to support their conjecture that EIS and TALX are attempting to circumvent compliance with the FCRA. Likewise, Plaintiffs have not set forth a cognizable theory that would allow them to

establish willfulness as a matter of law. Defendants' motion to dismiss should be granted in its entirety and the Complaint dismissed with prejudice.

## ARGUMENT

### I. EQUIFAX INC. IS NOT A CONSUMER REPORTING AGENCY.

Plaintiffs have not, and cannot, allege that Equifax Inc. assembled or evaluated consumer information for the purpose of preparing credit reports, or that Equifax Inc. prepared credit reports on them. Those are the critical facts that must be plead to establish that Equifax Inc. is a consumer reporting agency ("CRA") with obligations under the FCRA. *See* 15 U.S.C. § 1681a(f); *id.* § 1681g(a)(1). The claims against Equifax Inc. therefore must be dismissed.

That Plaintiffs have failed to plead those facts is unsurprising. Numerous courts have held that Equifax Inc., a holding company, is not a CRA within the meaning of the FCRA. *See* Def. Mem.[1] at 6-7 (citing cases). Plaintiffs have cited no case to the contrary. Instead, they contend that this Court should disregard this unwavering line of decisions because they were made at summary judgment. *See* Pl. Opp.[2] at 12. But the posture of the cases does not change the law: Equifax Inc. is simply not a CRA, as every court to reach the issue has held. Plaintiffs give this Court no reason to think that further fact development will somehow allow this Court to reach a different result.

Although Plaintiffs did not plead a veil-piercing or alter ego theory in their Complaint, they are apparently advancing such a theory now. *See* Pl. Opp. at 6-7. A plaintiff cannot use his opposition to a motion to dismiss to amend his complaint; rather, any amendment must be done

---

[1] The Memorandum of Law in Support of Defendants' Motion to Dismiss will be referred to herein as "Def. Mem."

[2] Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss will be referred to herein as "Pl. Opp."

through the formal motions process. *Cf. Lewis v. Nationstar Mortgage, LLC*, No. 3:13CV00026, 2014 WL 325259, at *6 (W.D. Va. Jan. 29, 2014), appeal dismissed (Aug. 12, 2014) (holding that plaintiff must "formally move to amend" his complaint and "provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make") And by attempting to do so, Plaintiffs implicitly concede that the only way in which Equifax could possibly be held liable under the FCRA would be to pierce the corporate veil and hold it responsible for the actions of its two subsidiaries, EIS and TALX.

Plaintiffs have failed to plausibly plead any facts that would support veil piercing, and courts have consistently rejected similar theories. First, it is uncontested that Equifax Inc. is structured as a parent holding company that reports its business results in five operating segments.[3] *See* Def. Mem. at 3-4. The two operating segments that provide and/or monitor credit-related information combine to form EIS, and one of the three remaining segments is Workforce Solutions. *Id.* Not only does Equifax Inc.'s 2012 Form 10-K explicitly state that Equifax Inc. organizes and reports business in five distinct operating segments, it provides a breakdown of total revenue for each of those segments in graphical format. *See* 2012 Form 10-K, attached to the Declaration of John W. Montgomery, Jr. in Support of Defendants' Motion to Dismiss ("Montgomery Decl.") at Exh. 1, p. 3.

---

[3] Plaintiffs claim that the Equifax, Inc. 2012 Form 10-K is not the type of document properly incorporated into a motion to dismiss, *see* Pl. Opp. at 4, despite the fact that Plaintiffs themselves put this document into play by repeatedly citing to it in their Complaint. Clear judicial authority allows such a document to be judicially noticed. *See Searls v. Sandia Corp.*, No. 1:14CV578 JCC/TCB, 2014 WL 4793491, at *2 (E.D. Va. Sept. 25, 2014) (citing to *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)) (the court "may properly take judicial notice of matters of public record . . . [and] may also consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic .").

Plaintiffs' attempt to somehow turn this innocuous point into a concession that all three entities — Equifax Inc., EIS, and TALX — are one and the same ignores both accounting regulations and general principles of corporate law. Simply because Equifax Inc. reports the financial results for all of its subsidiary operating segments as one reporting segment does not mean these subsidiaries actually operate as one. General accounting principles recognize and permit a holding company to do just that: report aggregate financial data for different operating segments that have similar economic characteristics and provide similar products or services. *See generally* Codification of Accounting Standards and Procedures, Financial Accounting Standards Board Accounting Standards Codification 280, Segment Reporting 50-11 (Am. Inst. Of Certified Pub. Accountants 2011) (allowing for operating segments to be aggregated for financial reporting purposes that have similar economic characteristics and provide similar products and/or services).[4] The fact that data for these two separate operating companies is reported and aggregated together in some public filings is not a plausible basis for piercing the corporate veil.

Second, federal courts have consistently rejected similar conclusory allegations and cursory attempts to pierce Equifax Inc.'s corporate veil to hold it liable under the FCRA. For example, in *Persson v. Equifax Inc.*, No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) (unpublished) (copy attached hereto as Exhibit A), where the plaintiff alleged that Equifax Inc. and EIS operated as a single entity, the court refused to pierce Equifax Inc.'s corporate veil based on unsupported allegations. The court rejected the plaintiff's argument that Equifax Inc. and EIS

---

[4] The accounting literature cited by Plaintiffs is either inapplicable, as Equifax Inc. is not subject to IFRS regulations as a publicly traded company on an American stock exchange, or beside the point. There is no dispute that EIS and TALX are separate operating segments of Equifax Inc., and each has its own president to manage its business affairs. *See* 2012 Form 10-K, Montgomery Decl. at Exh. 1, pp. 14-15.

"should be treated as one entity for purposes of liability and that Equifax [Inc.] is 'vicariously liable' for" the acts of EIS. *Id.* at 3. The court explained: "The corporate veil of a parent company can be pierced to allow liability for the acts of a subsidiary" only where "the protections of the corporate form would result in some injustice or inequitable consequences." *Id.* (*citing Kinney Shoe Corp. v. Polan*, 939 F.2d 209, 211 (4th Cir. 1991)). The court held that the plaintiff presented no "evidence to suggest that Equifax Information Services, LLC is a mere sham corporation, that it is grossly undercapitalized, or that its corporate form is being used for some other unjust or inequitable purposes by Equifax [Inc.]" *Id.* at 3-4 (*citing DeWitt Truck Brokers, Inc. v. W. Ray Fleming Fruit Co.*, 540 F.2d 681, 684 (4th Cir. 1976)). Consequently, "the court cannot hold Equifax, Inc. liable for Equifax Information Services, LLC's alleged FCRA violations." *Id.* at 4. *See also Channing v. Equifax, Inc.*, 5:11-cv-00293-FL, 2013 WL 593942, at * 3-4 (E.D. N.C. Feb. 15, 2013) (granting summary judgment to Equifax, Inc., finding that plaintiff presented no evidence that EIS was insolvent, was a mere instrumentality of Equifax Inc., or that EIS was dominated and controlled by Equifax, Inc.).

The cases upon which Plaintiffs rely, none of which are in the FCRA context, do not support their veil-piercing allegations. Plaintiffs cite to *Thomas v. Peacock*, 39 F.3d 493, 504 (4th Cir. 1994),[5] for the unremarkable proposition that a corporate veil could be pierced if adherence to the corporate fiction would evade legal obligations. But neither EIS nor TALX dispute that they are consumer reporting agencies subject to the requirements of the FCRA, so there is no reason to pierce Equifax Inc.'s corporate veil to hold either responsible under the FCRA. And until Plaintiffs can plead plausible facts that would support a reasonable inference

---

[5] The judgment in *Thomas* was later reversed by the Supreme Court on other grounds. *See Peacock v. Thomas*, 516 U.S. 349 (1996).

5

that *Equifax Inc.* is trying to evade the FCRA, there is no basis to pierce EIS's and TALX's corporate veils to impute their FCRA obligations to Equifax Inc.

Contrary to Plaintiffs' assertions, the Complaint is devoid of detail and specificity as to the commingling of functions that would allow for piercing of the corporate veil. Plaintiffs allege, without detail or support, that Equifax Inc. transfers data between units and operations without any impediments of corporate structure, *see* Complaint ¶ 32. Something much more than that is needed to support a plausible claim for veil piercing, even at this stage in the litigation. Indeed, the cases on which Plaintiffs rely demonstrate that far more detail is necessary to sustain a veil-piercing claim, including allegations related to specific actions taken by the company and specific representations made. *See CitiMortgage, Inc. v. NL, Inc.*, No. 4:09CV2104 FRB, 2010 WL 1610411, at *3 (E.D. Mo. Apr. 21, 2010); *Trabucco v. Intesa Sanpaolo, S.p.A.*, 695 F. Supp. 2d 98, 107 (S.D.N.Y. 2010); *McWilliams Ballard, Inc. v. Level 2 Dev.*, 697 F. Supp. 2d 101, 106 (D.D.C. 2010). Even in the cases where a plaintiff has alleged that a corporate veil should be pierced because of an individual executive's actions, the plaintiff provided more detail regarding the type and amount of operational control and interest exerted to defeat dismissal. *See Osgood v. Midwest Parking Solutions*, No. 4:07CV1365SNLJ, 2009 WL 4825192, at *4 (E.D. Mo. Dec. 11, 2009).[6] Measured using Plaintiffs' own yardstick, their conclusory allegation regarding veil piercing fail. There is no factual or legal basis to hold Equifax Inc. liable under the FCRA for the actions of its subsidiaries.

## II. EIS AND TALX ARE DISTINCT AND SEPARATE CONSUMER REPORTING AGENCIES, WITH INDEPENDENT OBLIGATIONS UNDER THE FCRA.

---

[6] In *Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial, Marine Cleaning, Inc.*, 850 F. Supp. 905 (D. Or. 1994), the Court did not rule on the sufficiency of the alter ego allegations, rendering the case meaningless for this Court's analysis.

Plaintiffs fail to respond to the key argument in EIS and TALX's motion to dismiss: that the plain language of the FCRA treats each entity as a separate consumer reporting agency, with separate, and independent reporting obligations. Ignoring Congress's careful statutory scheme, which treats a nationwide specialty consumer reporting agency like TALX, *see* 15 U.S.C. § 1681a(x), differently from a nationwide consumer reporting agency like EIS, *see* 15 U.S.C. § 1681a(p), Plaintiffs again ask this Court to simply ignore EIS's and TALX's corporate structure and separate missions and treat them either as essentially the same or as essentially one. There is no plausible factual basis in this Complaint for doing either.

First, Plaintiffs say they have "plausibly allege[d TALX] is more" than a nationwide specialty consumer reporting agency. *See* Pl. Opp. at 13. This is belied by the very allegations set forth in the Complaint, which acknowledges that TALX gathers employment-related information from the organizations with which it contracts, and provides associated services to those organizations. *See* Complaint ¶¶ 14-20. Plaintiffs even provide a printout of the functions that TALX provides, which does not mention credit-related information or services. *See id.* at printout between pages 3 and 4. Furthermore, they have provided no plausible basis or support for the assertion that the "Defendants" (presumably all three) commonly use a FCRA-governed database or that "Defendants" (again, presumably all three) freely transfer data between units and operate without any impediments of corporate structure. *See* Pl. Opp. at 3, 13. Plaintiffs cannot plead their way around the careful statutory structure by lobbing unsupported factual allegations at the "Defendants."

Second, Plaintiffs argue that somehow EIS and TALX are really one-in-the-same and are structured to evade their respective and collective legal obligations through "creative" corporate structuring. *See* Pl. Opp. at 8, Plaintiffs have pled no plausible factual allegations to support this

7

theory. Plaintiffs attempt to support this argument by citing to Federal Trade Commission regulations, *id.* at 8-10, but these regulations say nothing about whether EIS and TALX entities have been structured to avoid FCRA obligations; the regulations describe only the general prohibition on structuring corporations to avoid liability under the FCRA. And the Complaint contains no allegations that would support such a theory. Moreover, the actual history and structure of Equifax Inc. and TALX belie Plaintiffs' theory. Equifax Inc. acquired TALX as a separate entity focused on employment-related data,[7] and there are no allegations that TALX has ever expanded into compiling and maintaining credit-related information.

Having pleaded no plausible factual basis for its argument that the two separate Equifax Inc. subsidiaries should be treated as one, Plaintiffs turn to inapplicable case law. Their reliance on *Cortez v. Trans Union*, 617 F.3d 688, 711-12 (3d Cir. 2010), is misplaced. In *Cortez*, Trans Union, a nationwide CRA, contracted with Accuity, a third-party vendor it created, to maintain information relating to persons listed on the Specially Designated Nationals & Blocked Persons List ("SDN List"), and then argued that because Accuity maintained the information, Trans Union was not subject to the disclosure requirement in § 1681a(g). *Cortez* merely demonstrates that Congress did not intend to allow consumer reporting agencies to escape their § 1681a(g) disclosure obligations by contracting with a third party to store and maintain information. *Id.*

---

[7] On February 14, 2007, Equifax Inc. and TALX announced that they entered into an agreement that provides for TALX to merge with and into a wholly-owned subsidiary of Equifax Inc.. *See* Equifax Inc. Form 8-K filed with the SEC on February 15, 2007 (attached to the Declaration of John W. Montgomery, Jr. in Support of Defendants' Reply Brief in Further Support of Their Motion to Dismiss ("Montgomery Reply Decl.") as Exhibit 1). As set forth in the press release attached to the Form 8-K, "[b]ased in St. Louis, TALX is a leading provider of employment verification and related human resource/payroll services." *See id.* at Ex. 99.2 (attached to the Montgomery Reply Decl. as Exhibit 2). Because these documents are a matter of public record and integral to the Complaint's allegations, they should be judicially noticed. *See Searls*, 2014 WL 4793491, at *2.

This case has nothing to do with contracting with third parties. TALX is a separate legal entity with its own obligations under the FCRA. *Cortez*, therefore, is inapposite.

To the extent Plaintiffs also rely on *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007), which the Third Circuit cited in *Cortez*, that decision too is inapposite. There, the Seventh Circuit held that a consumer's "file" included all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer. *Id.*; *see also* 16 C.F.R. pt. 600, app. § 603. There are no allegations in the Complaint that EIS records and retains employment-related information or has, or might, furnish such information in a consumer report—or *vice versa*.

Plaintiffs' FCRA claims hang on the conclusory and factually implausible single allegation that the two separate corporate entities "freely transfer[] data between units," *see e.g.* Complaint ¶ 2, thus giving rise to joint and multiple FCRA obligations for EIS and TALX as both nationwide consumer reporting agencies and nationwide specialty consumer reporting agencies. If Plaintiffs' unsupportable legal theory and implausible factual theory were correct, then no nationwide consumer reporting agency could ever be housed within the same corporate umbrella with a nationwide specialty consumer reporting agency, for each would have reporting and FCRA obligations for the other—and that is not what Congress intended when it created the careful structure of the FCRA.

### III. PLAINTIFFS CANNOT ESTABLISH A WILLFUL VIOLATION AS A MATTER OF LAW.

Contrary to Plaintiffs' assertions otherwise, they have not plausibly pleaded a claim for willfulness to survive a motion to dismiss. Plaintiffs acknowledge, *see* Pl. Opp. at 14, that they have done nothing more to support their willfulness claim than assert that the conduct by Equifax, EIS and TALX was willful. Repeating unsupported allegations several times does not

make them any more substantiated. There is not a single allegation to suggest that any of the Defendants knowingly violated the FCRA or recklessly disregarded its requirements.

Plaintiffs' reliance on the cases set forth in its opposition brief likewise do not support their argument; rather, they are either inapposite or support *Defendants'* argument that Plaintiffs' allegations are insufficient as a matter of law. For example, in *Singleton v. Domino's Pizza, LLC*, No. CIV.A. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012), the Court explicitly stated that "[i]n the wake of *Twombly* and *Iqbal*, a mere assertion of willful noncompliance with the FCRA will not, on its own, satisfy Rule 8(a). Thus, to avoid dismissal, plaintiffs asserting that a defendant willfully failed to comply with the FCRA must set forth specific allegations to demonstrate willfulness." (citations omitted). In other cases upon which Plaintiffs rely, the plaintiffs pled far more detailed allegations than Plaintiffs have here. *See e.g. Dennis v. Trans Union, LLC*, No. CIV.A. 14-2865, 2014 WL 5325231, at *9 (E.D. Pa. Oct. 20, 2014) (complaint specifically identified conduct with respect to plaintiff, including erroneous information supplied by a third party that appeared on plaintiff's credit report, but was attributed to a different entity as the source in violation of Section 1681g(a)(2)); *Zaun v. Tuttle, Inc.*, No. CIV. 10-2191 DWF/JJK, 2011 WL 1741912, at *2 (D. Minn. May 4, 2011) (allegations included details of conversations between the third party and defendants regarding upgrades necessary for defendants to comply with the laws governing credit card processing and truncation, but defendant ignored these warnings); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1214 (C.D. Cal. 2007) (details included information about telephone calls made and minutes of team meetings where employees were advised of the software change).

Plaintiffs' reliance upon *Boyd v. CEVA Freight, LLC.*, No. 3:13-cv-CV-00150-JAG, 2013 WL 6207418, at * 7 (E.D. Va. Nov. 27, 2013), is also misplaced. In *Boyd*, the Court based its

finding of willfulness upon the fact that the statute at question presented a clear, cognizable command. *Id.* Not so here. Although Defendants contend that the FCRA unambiguously treats separate CRAs separately, the statute is, at worst, ambiguous as to the obligations of CRAs housed within the same corporate family. *See Levine v. World Financial Network Nat. Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009) (rejecting willfulness claim where the FCRA provision at issue was ambiguous, and therefore the consumer reporting agency's interpretation could not have been objectively unreasonable as required by *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007)). As such, EIS and TALX's interpretation could not be objectively unreasonable as required under *Safeco* to plausibly assert a claim of recklessness. Because Plaintiffs cannot establish willfulness as a matter of law, this claim should be dismissed with prejudice.

## CONCLUSION[8]

As a result of the foregoing, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted this 23rd day of January, 2014.

/s/
John W. Montgomery, Jr.
Virginia State Bar No. 37149
Attorneys for Defendant Equifax, Inc., Equifax Information Services LLC and Talx Corporation
John W. Montgomery, Jr., Attorney, PLC
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone (804) 355-8744
Facsimile (804) 355-8748
Email: jmontgomery@jwm-law.com

---

[8] Plaintiff Henderson's individual claim suffers from the same defects as the class claims. Thus, Plaintiff Henderson's individual claim should likewise be dismissed with prejudice.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of January, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard Anthony Bennett
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601

Matthew James Erausquin
Casey S. Nash
Consumer Litgation Associates PC (Alex)
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314

    /s/
    John W. Montgomery, Jr.
    Virginia State Bar No. 37149
    Attorneys for Defendant Equifax, Inc., Equifax Information Services LLC and Talx Corporation
    John W. Montgomery, Jr., Attorney, PLC
    2116 Dabney Road, Suite A-1
    Richmond, VA 23230
    Telephone (804) 355-8744
    Facsimile (804) 355-8748
    Email: jmontgomery@jwm-law.com

.