**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**CHAUNA JONES f/k/a CHAUNA CRAWLEY**
**and**
**TYRONE HENDERSON, on behalf of themselves**
**and all other similarly situated individuals,**

        **Plaintiffs,**

**v.**                                      **Civil Action No. 3:14cv678**

**EQUIFAX, INC., in its own name and t/a**
**EQUIFAX WORKFORCE SOLUTIONS**
**a/k/a TALX CORPORATION and**
**EQUIFAX INFORMATION SERVICES, LLC,**

        **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Equifax, Inc., in its own name ("Equifax") and t/a Equifax Workforce Solutions a/k/a Talx Corporation ("TALX"), and Equifax Information Services LLC's ("EIS") (collectively, "Defendants") Motion to Dismiss the matter against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 17.) Plaintiffs Chauna Jones and Tyrone Henderson ("Plaintiffs") filed a response to the motion, and Defendants replied. (ECF Nos. 31, 32.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction

---

[1] Fed. R. Civ. P. 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted."

pursuant to 28 U.S.C. §§ 1331.[2]  For the reasons that follow, the Court will deny the Motion to Dismiss.

## I.  Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).  Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a

---

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Plaintiff brings this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*, including 15 U.S.C. § 1681p, which governs jurisdiction.

2

claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## II. Procedural and Factual Background

A.      **Summary of Allegations in Plaintiffs' Complaint**[3]

In early 2013, Plaintiff Jones requested a full copy of her file from Defendants. On February 13, 2013, Defendants responded to her request with a "conventional credit report." (Compl. ¶ 38.) Defendants represented that this report constituted Jones's "full file." (*Id.*) The report provided to Jones on February 13 contained no information concerning Jones's entry in Defendants' Work Number Database, in which they maintain employment, tax, and other information for sale to third parties.

In April 2013, Plaintiff Henderson requested a full copy of his file from Defendants. On May 24, 2013, Defendants responded to his request with a "conventional credit report." (Compl. ¶ 42.) Defendants represented that this report constituted Henderson's "full file." (*Id.*) The report provided to Henderson on May 24 contained no information concerning Henderson's entry in the Work Number Database. Additionally, Henderson's credit report contained inaccurate information, including "name variation" and an erroneous address. (Compl. ¶¶ 45–46.) As a result of the inaccurate credit reporting, Henderson has suffered actual damages.

Plaintiffs aver that Defendants' 2012 10-K report[4] indicates that FCRA applies to "nationwide consumer credit reporting agencies, such as us." (Compl. ¶ 50.) Plaintiffs state that

---

[3] For purposes of the Motion, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Plaintiffs. *Matkari*, 7 F.3d at 1134.

Defendants "are well aware" of FCRA obligations imposed upon them, and that the conduct alleged "was not a mere mistake or accident . . . [but instead] the intended result of their standard operating procedures." (Compl. ¶¶ 48, 52.)   Plaintiffs contend that Defendants acted in a willful manner, creating liability for punitive damages.

**B.**   **Procedural History**

Plaintiffs bring this purported class action against Defendants[5] alleging two FRCA violations.  In Count I, a class claim, Plaintiffs allege that Defendants, operating collectively and jointly as a national "consumer reporting agency" ("CRA") as defined in 15 U.S.C. § 1681a(f),[6]

---

[4] The United States Securities and Exchange Commission requires public companies to disclose information in an annual 10-K report, which "provides a comprehensive overview of the company's business and financial condition and includes audited financial statements." *Form 10-K*, U.S. Secs. and Exch. Comm'n, http://www.sec.gov/answers/form10k.htm (last visited August 27, 2015).

[5] Plaintiffs' Complaint defines all Defendants collectively as "Defendants" or "Equifax." (Compl. ¶ 9.)  For clarity, the Court will use only "Defendants" in this Memorandum Opinion. (*See, e.g.*, Compl. ¶¶ 37–40 (using Equifax and Defendants interchangeably).)

[6] That statute defines a "consumer reporting agency" as:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

violated 15 U.S.C. § 1681g(a)[7] by not providing Plaintiffs with their full file at the time of their

requests. Specifically, Plaintiffs aver that Defendants were required to include the information

held about Plaintiffs in the Work Number Database upon Plaintiffs' request for their files.

In Count II, Plaintiff Henderson individually alleges that EIS[8] violated 15 U.S.C.

§ 1681e(b)[9] by not following "reasonable procedures to assure maximum possible accuracy of

---

[7] That statute, governing disclosures to consumers, states in pertinent part:

Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:

(1) All information in the consumer's file at the time of the request, except that—

(A) if the consumer to whom the file relates requests that the first 5 digits of the social security number (or similar identification number) of the consumer not be included in the disclosure and the consumer reporting agency has received appropriate proof of the identity of the requester, the consumer reporting agency shall so truncate such number in such disclosure; and

(B) nothing in this paragraph shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer.

(2) The sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed: *Provided*, That in the event an action is brought under this subchapter, such sources shall be available to the plaintiff under appropriate discovery procedures in the court in which the action is brought.

15 U.S.C. § 1681g(a).

[8] Defendants challenge the entirety of Count I, the class claim, but they challenge only the willfulness pleaded in Plaintiff Henderson's second count against EIS. Therefore, the Court confines its analysis of Count II to an evaluation of willfulness.

[9] Section 1681e, governing compliance procedures, states, in pertinent part: "(b) Accuracy of report: Whenever a consumer reporting agency prepares a consumer report it shall

the credit reports and credit files it published and maintained concerning" Henderson. (Compl. ¶ 16.) Henderson cites a number of cases in which EIS has been sued for FCRA violations. Henderson argues that despite such suits, and the receipt of written materials advising it to comply with FCRA, EIS has not modified its procedures to comply with FCRA.

On October 3, 2014, Plaintiffs filed their Complaint. (ECF No. 1.) On December 8, 2014, Defendants filed their Motion to Dismiss. (ECF No. 17.) After two extensions of time (ECF Nos. 21, 30), Plaintiffs filed their response to the Motion to Dismiss. (ECF No. 31.) Defendants have filed their reply in support of the Motion to Dismiss. (ECF No. 32.) Accordingly, this matter is ripe for disposition.

### III. Analysis

**A.    Applicable Law: FCRA**

**1.    Standard to Establish Liability for Negligence and Willfulness Under FCRA**

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). FCRA provides a private right of action for consumers against entities or persons that violate the statute. *Id.* at 53. If a FCRA violation occurs through negligence, "the affected consumer is entitled to actual damages." *Id.* (citing 15 U.S.C. § 1681o(a)). For willful FCRA violations, the consumer may recover actual, statutory, and punitive damages. *Id.* (citing 15 U.S.C. § 1681n(a)). The Supreme Court of the United States has interpreted willfulness to include reckless violations. *Safeco Ins. Co.*, 551 U.S. at 57–58. Reckless actions entail "an

---

follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

For the purposes of a Rule 12(b)(6) motion to dismiss, courts have found a plaintiff sufficiently pleads willfulness or recklessness when he or she asserts that a defendant has repeatedly violated FCRA or was aware of FCRA's requirements but failed to comply. *See Freckleton v. Target Corp.*, No. WDQ-14-0807, at 17 n.13 (D. Md. Jan. 12, 2015) (denying motion to dismiss); *Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012) (citing cases); *Zaun v. Tuttle, Inc.*, No. 10-2191 (DWF/JJK), 2011 WL 1741912, at *2 (D. Minn. May 4, 2012) (analyzing an amendment to the FCRA, the Fair and Accurate Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g)); *Cappetta v. GC Servs. Ltd. P'ship*, 654 F. Supp. 2d 453, 461–62 (E.D. Va. 2009); *In re TJX Cos., Inc.*, No. md-1853-KHV, 2008 WL 2020375, at *2 (D. Kan. May 9, 2008) (citing cases) (FACTA claim). "[W]hether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question." *Dennis v. Trans Union, LLC*, No. 14-2865, 2014 WL 5325231, at *8 (E.D. Pa. Oct. 20, 2014) (citation omitted); *accord Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) ("Willfulness under the FCRA is generally a question of fact for the jury." (citations omitted)) (FCRA and FACTA claims).

### 2.    FCRA's Requirement to Disclose All Information in a Consumer's File

FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). The United States Court of Appeals for the Seventh Circuit has found that "[t]he

term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report on that consumer.*" *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (emphasis in original) (citing 16 C.F.R. pt. 600, app. § 603). The Seventh Circuit has held that, although a consumer's "entire file" need not be disclosed upon request, "complete copies of their consumer reports" must be disclosed upon request. *Id.* The United States Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example, "contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report," *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711 (3d Cir. 2010), or by using "[c]orporate organization, reorganization, structure, or restructuring." to circumvent reporting requirements. 12 C.F.R. § 1022.140(a).

### 3. FCRA's Requirement to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

FCRA also mandates that when CRAs prepare consumer reports, they "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The determination regarding the "reasonableness of a credit reporting agency's procedure is 'normally a question for trial unless the reasonableness or unreasonableness of the procedure is beyond question.'" *Cortez*, 617 F.3d at 709 (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004)). A complaint alleging a violation of § 1681e(b) must sufficiently plead that: "(1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001).

**B.      Plaintiffs Adequately State a Claim for Violations of FCRA Because They Plausibly Allege that Defendants Operate Collectively as a CRA**

Plaintiffs sufficiently state a claim for liability under FCRA because they plausibly allege that all Defendants operate collectively as a CRA. A consumer reporting agency is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). Plaintiffs adequately assert that Defendants assemble and evaluate information on consumers, by pointing to Defendants' own website that states that "Equifax organizes and assimilates data on more than 500 million consumers . . . worldwide." (Press Release, Equifax, Inc., LPS Partners with Equifax to Offer Lenders Employment Verifications through the Loan Quality Gateway (October 23, 2012);[10] *see* Compl. ¶ 26.) Plaintiffs sufficiently contend that Defendants do so for monetary fees or on a cooperative nonprofit basis. (Compl. ¶ 14 ("[T]he fees we charge for these services are generally on a per transaction basis."); *id.* ¶ 30 ("[T]he Work Number provides these services at a reduced cost, or no cost at all, so long as the organizations agree to provide their payroll information . . . to the Work Number Database.").) Plaintiffs aver that Defendants engage in such activities for the purpose of furnishing consumer reports to specific third parties, such as employers, consumer finance providers, and mortgage companies. Finally, Plaintiffs plausibly allege that the Defendants do so

---

[10] The Court may consider this document because the website is sufficiently referred to in the Complaint and Defendants do not challenge its authenticity. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).

collectively.[11] Accordingly, Plaintiffs have sufficiently pled, for the purposes of a motion to dismiss, that Defendants operate as a credit reporting agency.[12]

### C.    Plaintiffs Plausibly State Claims for Willful Violations of FCRA

For the following reasons, Plaintiffs sufficiently state a claim for willful violations of 15 U.S.C. §§ 1681g(a)(1) and 1681e(b). First, in Count I, Plaintiffs sufficiently state a claim for a willful violation of 15 U.S.C. § 1681g(a)(1) for Defendants' failure to "clearly and accurately disclose" to the requesting consumer Plaintiffs "[a]ll information in the [Plaintiffs'] file[s] at the time of the request[s]." 15 U.S.C. § 1681g(a)(1).

In Count I, Plaintiffs allege that they made requests for their file from Defendants in 2013, but the information they received did not include the information held in the Work Number Database. The Complaint states the Work Number Database information constitutes

---

[11] Defendant Equifax, Inc. disputes this claim by citing to a number of cases in which district courts held that Equifax, Inc. did not operate as a CRA. These Courts have generally found Equifax, Inc. to be a holding company that does not exercise control over consumer credit information. However, every decision cited by Equifax, Inc. was rendered at the summary judgment stage. *Greear v. Equifax, Inc.*, No. 13-11896, 2014 WL 1378777 (E.D. Mich. Apr. 8, 2014); *Channing v. Equifax, Inc.*, No. 5:11-CV-293-F:, 2013 WL 593942 (E.D.N.C. Feb. 15, 2013); *Ransom v. Equifax, Inc.*, No. 09-80280-CIV, 2010 WL 1258084 (S.D. Fla. Mar. 30, 2010); *Slice v. Choicedata Consumer Srvs., Inc.*, No. 3:04-CV-428, 2005 WL 2030690 (E.D. Tenn. Aug. 23, 2005); *Persson v. Equifax, Inc.*, No. 7:02CV00511 (W.D. Va. Oct. 28, 2002); *Weiler v. Transunion, Inc.*, No. 99-936 (W.D. Pa. Nov. 16, 2000). Further, in each of the cases cited above, the plaintiff either proceeded *pro se* or failed to oppose the motion. Such rulings cannot provide persuasive support for the Defendants' position at the Motion to Dismiss stage.

Defendants also contend, using the Declaration of John W. Montgomery, Jr. and Equifax's 10-K form, that differences among Equifax, Inc. (a holding company), TALX (a specialty consumer reporting agency), and EIS (a consumer reporting agency) necessitate dismissal of this claim. That Defendants placed these additional documents on the record further demonstrates the propriety of deciding this issue at summary judgment, or trial.

[12] Plaintiffs also argue that the Court may pierce the corporate veil in this instance. Piercing the corporate veil is "an attempt to impose a preexisting liability upon an entity *not otherwise liable*." *Thomas v. Peacock*, 39 F.3d 493, 499 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 349 (1996) (citing *Sandlin v. Corp. Interiors Inc.*, 972 F.2d 1212, 1217 (10th Cir. 1992)). Because the Court finds Plaintiffs have sufficiently pleaded Defendants' liability, the Court need not reach this argument at this juncture.

part of the consumer files in the form that would be sold to a third party. Plaintiffs assert that Defendants use a common FCRA-governed database that includes the Work Number Database information.

A lack of clarity as to what constitutes a file exists, including how or where information is stored. However, such arguments, which require evidence not appropriate on a motion to dismiss, are more suitably determined on summary judgment or at trial. Accordingly, at the motion to dismiss stage, such statements sufficiently demonstrate the plausible claim that the Work Number Database is part of the Plaintiffs' "file," and § 1681g(a)(1) required Defendants to disclose such information upon Plaintiffs' requests.

In Count II, Plaintiff Henderson sufficiently states a claim for a willful violation[13] of 15 U.S.C. § 1681e(b) for EIS's failure to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Henderson alleges that his credit report from EIS contained inaccurate information, including "name variation" and an erroneous address. (Compl. ¶ 45–46.) As a result of the inaccurate credit reporting, Henderson alleges that he has suffered actual damages. He sufficiently pleads willfulness because he alleges that EIS has repeatedly violated § 1681e(b) in the past and failed to correct its procedures. *See, e.g.*, *Cappetta*, 654 F. Supp. 2d at 461–62. Accordingly, Plaintiffs have plausibly pled willfulness in Counts I and II.

---

[13] As discussed in note 8, *supra*, the Court need not address whether Henderson sufficiently alleged a merely negligent violation of § 1681e(b).

11

## V. Conclusion

For the foregoing reasons, the Court denies the Motion to Dismiss. (ECF No. 17.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: **8-27-2015**
Richmond, Virginia

12